MRS. ANNA KITTLER, Appellant, v. C. F. KELSCH, Respondent.

(— A.L.R. —, 216 N. W. 898.)

**False imprisonment — criminal warrant wrongfully obtained — malicious prosecution.**

1. If a criminal warrant be wrongfully obtained upon sufficient legal pro-

ceedings, the civil action for resulting damages would be for malicious prosecution and not for false imprisonment.

**Public prosecutor — when he must institute proceedings.**

2. The state's attorney is the public prosecutor, and must institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses, when he has information that such offenses have been committed.

**State's attorney — pass on sufficiency of evidence — not liable for judicial mistake.**

3. The state's attorneys in this state are quasi judicial officers, and where a state's attorney passes upon the sufficiency of evidence before a justice of the peace or the sufficiency of evidence within his own knowledge, as a basis for a criminal prosecution, he acts in a judicial capacity and is not liable in a civil action for a judicial mistake, or for having process issued to make his decision effective.

Opinion filed November 25, 1927.   Rehearing denied December 29, 1927.

District and Prosecuting Attorneys, 18 C. J. § 32 p. 1306 n. 48.   False Imprisonment, 25 C. J. § 3 p. 444 n. 16.   Malicious Prosecution, 38 C. J. § 112 p. 456 n. 42.

Appeal from the District Court of Morton County, *Berry,* J.
Affirmed.

*F. O. Hellstrom,* for appellant.

"Before there can be a probable cause which would warrant the arrest of a person, there must be at least some information connecting that person with the commission of the alleged offense." Schneider v. Shepard, 192 Mich. 82, 158 N. W. 182, L.R.A.1916F, 399.

"In the construction of a particular statute, all acts relating to the same subject will be read in connection with it, as together constituting one law." Watts v. Gerking (Or.) 228 Pac. 135, 34 A.L.R. 1439.

"The district attorney is a quasi judicial officer. He represents the commonwealth, and the commonwealth demands no victims; it seeks justice only—equal and impartial justice—and it is as much the duty of the district attorney to see that no innocent man suffers as it is to see that no guilty man escapes." Pickles v. Anton, 49 N. D. 47, 189 N. W. 684.

Where a public officer acts without authority of law whatever and either exceeded or ignored or abused the power of his office wilfully

and maliciously, such act, whether it be judicial or ministerial renders the public official liable to respond in damages to any person who may suffer injury thereby. Mechem, Pub. Off. § 669; Jewell v. Swain, 57 N. H. 506; Oriel v. Hunter, 40 Ala. 342; Brackett v. Vinning, 49 Me. 356; Syndacker v. Brouse, 51 Ill. 357, 99 Am. Dec. 551.

"Public officers whose duties are judicial may be liable for negligence as regards their ministerial functions at the suit of a private individual who is specially injured thereby." 22 R. C. L. 485, § 162.

*Sullivan, Hanley & Sullivan,* for respondent.

"The district attorney in determining whether to institute a prosecution is a quasi judicial officer who possesses a certain discretion as to when, how and against whom to proceed." Watts v. Gerking, 228 Pac. 135.

"A purely ministerial duty is one as to which nothing is left to discretion." 5 Words & Phrases, 1st Ser. p. 4525; 40 C. J. 1209, § 4.

"A ministerial act is one which involves no judgment or discretion." State v. Stutsman, 24 N. D. 68, 139 N. W. 83.

Jurisdiction is the authority to hear and determine a cause; and the power to hear and determine the subject matter in controversy. 15 C. J. 723, § 13.

No public officer is responsible in a civil suit for a judicial determination however erroneous it may be and however malicious the motive which produced it. 11 R. C. L. 816.

"Whenever duties of a judicial nature are imposed upon a public officer, the due execution of which depends upon his own judgment, he is exempt from all responsibility by action for the motives which influence him and the manner in which such duties are performed." Griffith v. Slinkard, 44 N. E. 1001.

"To hold judicial officers personally liable for errors of judgment concerning either questions of law or fact would be subversive of both independence and efficiency in the administration of justice." Landseidel v. Culeman, 47 N. D. 275, 181 N. W. 593, 13 A.L.R. 1339.

BURKE, J. On the 25th day of November, 1925, C. F. Kelch, state's attorney of Morton county, received an anonymous letter charging the plaintiff, Mrs. Anna Kittler, with a felony, and stating, "if you don't see to it and get her out of town, there is a Women's Club in town that

will either lynch or tar and feather her." A short time thereafter, said state's attorney received a letter purporting to come from the plaintiff, Mrs. Anna Kittler, which refers to the subject matter of the former letter, and admits the truth of the statements therein, charging the plaintiff with the commission of a criminal offense, and signed "Mrs. Anna Kittler." On receipt of the last letter, the state's attorney made a complaint before a justice of the peace, a warrant was issued, thereon, and the plaintiff was arrested. After an investigation it appearing that the signature on the second letter was a forgery, the action against the plaintiff was dismissed. Thereafter the plaintiff sued the said state's attorney, C. F. Kelch, the defendant in this action, for damages, alleging all the facts as stated herein, and further that the said defendant, "did falsely, fraudulently, maliciously, oppressively, willfully, knowingly, and negligently, and without probable cause make a criminal complaint against the plaintiff in writing, and affixed his name thereto."

A copy of the criminal complaint, the warrant and the sheriff's return on the warrant are made a part of the complaint in this action, all of which are regular in form and are sufficient in substance. The complaint also includes a statement made by the state's attorney after an investigation and which was manifestly intended to exonerate the plaintiff from the charge made against her in the criminal complaint. A demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action was sustained and the plaintiff appeals.

In oral argument in this court, the plaintiff's attorney insisted that this action is for false arrest, or false imprisonment and in his brief after quoting from the case of Watts v. Gerking, 111 Or. 641, 34 A.L.R. 1489, 222 Pac. 318, 228 Pac. 135, he states, "There can be no quarrel with that ruling, but the case at bar is not one of malicious prosecution, it is one of false arrest." The allegations of the complaint and the copy of the criminal complaint made by the state's attorney, and the warrant issued thereon show conclusively the action is not for false imprisonment but for malicious prosecution. In the case of Johnson v. Girdwood, 7 Misc. 652, 28 N. Y. Supp. 152, the court said:

"If the plaintiff's characterization of his action in the brief as 'for false arrest and imprisonment' be correct, the complaint cannot stand

a moment, for it appears that the prosecution and conviction of the plaintiff were upon legal process; but 'an action for false imprisonment is for the defendant's having done that which, upon the stating of it, is manifestly illegal, while a malicious prosecution is for a prosecution which, upon the stating of it, is manifestly legal.' Lord Mansfield in Johnstone v. Sutton, 1 T. R. 544, 99 Eng. Reprint, 1243, 1 Eng. Rul. Cas. 766. Under our system of procedure a plaintiff's right of recovery depends, not upon the name he gives his action, or the classification to which he subjects it, but upon whether, on the facts exhibited, he is entitled to any legal redress."

Jaggard on Torts, page 424, states the law as follows: "A sufficient judicial warrant takes away from an imprisonment the essential element of illegality, and completely justifies an arrest. If the warrant be wrongfully obtained, altho upon sufficient legal proceedings, the civil action would be malicious prosecution. Marks v. Townsend, 97 N. Y. 590; Jefferies v. McNamara, 49 Ind. 142–145; Joiner v. Ocean S. S. Co. 86 Ga. 238, 12 S. E. 361; Knight v. International & G. N. R. Co. 9 C. C. A. 376, 23 U. S. App. 356, 61 Fed. 87; Finley v. St. Louis Refrigerator & W. Gutter Co. 99 Mo. 559, 13 S. W. 87; Lieb v. Shelby Iron Co. 97 Ala. 626, 12 So. 67; Pratt v. Brown, 80 Tex. 608, 16 S. W. 443; Kent v. Miles, 65 Vt. 582, 27 Atl. 194; Hobbs v. Ray, 18 R. I. 84, 25 Atl. 694; Murphy v. Martin, 58 Wis. 278, 16 N. W. 603." "Imprisonment caused by a malicious prosecution is not false unless without legal process or extra-judicial. Nebenzahl v. Townsend, 61 How. Pr. 356; Murphy v. Martin, 58 Wis. 276, 16 N. W. 603; Colter v. Lower, 35 Ind. 285, 9 Am. Rep. 735, 7 Am. & Eng. Enc. Law 663, 664, and cases cited; Turpin v. Remy, 3 Blackf. 210; Mitchell v. State, 12 Ark. 50, 54 Am. Dec. 253, and cases cited; 1 Chitty Pl. § 133." [Jaggard, Torts, p. 630, note]; Whitten v. Bennett, 30 C. C. A. 140, 57 U. S. App. 145, 86 Fed. 405.

The defendant, Kelch, proceeded under the statute, made the necessary and sufficient complaint, and the defendant was arrested on a sufficient warrant, and it follows that there was no false imprisonment. The remaining question is whether the plaintiff's complaint is sufficient as a case of malicious prosecution.

It is the contention of the plaintiff that the defendant, in making the complaint upon which the warrant was issued, acted in a ministerial

capacity and that he is responsible the same as any person who was not an officer.

The general duties of the state's attorney are prescribed in § 3376 Comp. Laws 1913, Subdivision 2 of said section provides: "That he (the state's attorney) must institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses, when he has information that such offenses have been committed."

This section *charges the state's attorney with the duty* of instituting criminal proceedings for the arrest of any person charged with *or reasonably suspected of committing a public offense.* He has no choice in the matter, the law makes it his duty, and states specifically that he must, and if he fails in his duty he may be removed from office.

Section 10,535 provides, that when the magistrate before whom the complaint is made is a justice of the peace, before issuing the warrant, the complaint, if *made by any person other than the state's attorney of the county,* and other evidence taken by such magistrate relating to the offense charged, must be submitted to such state's attorney, and he must examine into the charge, and enter either his approval or disapproval of the issuance of a warrant upon such complaint. If he disapproves no warrant shall be issued, but if he approves the warrant must issue. This section clothes the state's attorney with the judicial authority to decide when the evidence is sufficient and when a person is reasonably suspected of the commission of a public offense. It also contemplates the making of a criminal complaint by the state's attorney and makes a clear distinction between such a complaint and a complaint made by any other person in this to wit, *if the complaint* is made by *any person other than the state's attorney of the county,* it must be submitted to such state's attorney and warrant cannot issue without his approval, but if the complaint is made by the state's attorney who is charged with the duty of instituting criminal proceedings for the arrest of persons charged with, or reasonably suspected of the commission of a public offence, the warrant must issue, for the law has given to the state's attorney, the power to say when a warrant shall issue and when it shall not, and when he decides that the evidence is sufficient it is his duty to institute proceedings as provided in § 3376, Comp. Laws 1913, and make the complaint contemplated in § 10,535.

Under § 685, Comp. Laws 1913, the state's attorney is subject to removal by the governor for misconduct, or malfeasance in office, and subject to removal in a judicial proceeding for misconduct or malfeasance in office under § 10,481.

Under § 9830, he is guilty of a misdemeanor if he willfully fails or refuses to perform the duties of his office according to law, and he is guilty of a misdemeanor when he acts contrary to official duty under § 10,891.

The state's attorney is the legal adviser of the county commissioners. He must when required and without fee give his opinion in writing to the county, district, township, and school district officers on matters relating to the duties of their respective offices. He must advise irrigation engineers, and drain commissioners. He is the legal adviser of the grand jury, when there is a grand jury, and of every county officer in the county.

Under chapter 71, Session Laws 1890, prosecutions are by information filed by the state's attorney instead of by indictments filed by the grand jury. When a grand jury is called under § 10,635 "the grand jury has the power, and it is their duty to inquire into all public offenses committed or triable in the county or subdivision, and to present them to the court, either by presentment or indictment, or accusation in writing." § 10,656. When a grand jury is not called the same power is given to the state's attorney under § 10,629 which reads as follows:

"The state's attorney of the county or judicial subdivision in which any person charged with the commission of a crime or public offense has been held to answer, or other person appointed by the court as provided by law to prosecute, must make full examination and inquiry into the facts and circumstances touching any crime or public offense committed by the accused and triable in said county or judicial subdivision, and must file an information setting forth the crime committed according to the facts ascertained on such examination and inquiry and from the written testimony taken before the magistrate, whether it is the offense charged in the complaint upon which the examination was had or some other offense."

In the absence of a grand jury the state's attorney is given the same authority and charged with the same responsibility, except that the

language in § 10,629 is more mandatory than § 10,656. The law is well settled that the state's attorney is a quasi judicial officer. The plaintiff admits that he is a quasi judicial officer but claims that he was not acting in a judicial capacity in making the complaint in the criminal action against the plaintiff, and that is the only question involved in this case. It is, of course, well settled that judicial officers are not liable in a civil action for any decision within their jurisdiction. Landseidel v. Culeman, 47 N. D. 275, 13 A.L.R. 1339, 181 N. W. 593.

In the case at bar, there is no question about jurisdiction. The court had jurisdiction as a committing magistrate over the offense charged, and over the person of the defendant charged with the commission of the offense in the county of Morton. It was the duty of the state's attorney to prosecute all criminal offenses committed in said county, he had jurisdiction to hear and to decide that the facts before him were sufficient to institute a criminal prosecution thereon, and authority to have process issued to make his decision effective.

The case of Schneider v. Shepard, 192 Mich. 82, L.R.A.1916F, 399, 158 N. W. 182, relied upon by the plaintiff is a case of false imprisonment. In that case there was no complaint or warrant. The state's attorney did not even have the name of the person arrested. He had only the number of a house and a report made to him by private detectives, in reference to the conduct of that house, and with no further information and *without making a complaint or the issuing of a warrant* he ordered the inhabitants of said house arrested. The acts of the state's attorney were entirely outside the authority given him by the statute. He did not act under the law, and therefore the arrest and imprisonment was false imprisonment for which the attorney was liable.

A case in the same class, is the case of Shaw v. Moon, 117 Or. 558, 45 A.L.R. 600, 245 Pac. 318. In this case a justice of the peace issued a search warrant without the affidavit required by statute. The court held, that the issuance by a judicial officer of a search warrant upon a defective or insufficient affidavit does not render him civilly liable, even though he act maliciously and without probable cause, but if he issues a search warrant without an affidavit as required by statute he acts without any jurisdiction, and therefore is liable. The opinion quotes from 25 C. J. 515, as follows: "A judicial officer is not liable for acts done in his judicial capacity where there is not a clear absence of all juris-

diction over the subject matter and person, even though such acts constitute an excessive exercise of jurisdiction or involve a decision that the officer had jurisdiction over the particular case where in fact he had none." The distinction is that if the officer acts entirely without jurisdiction he is liable, but if there is an excess of jurisdiction, or if there is a question of jurisdiction which the officer must decide, then and in such case he is not liable even though he should decide wrongly in holding that he had jurisdiction when in fact he had none. This distinction is pointed out clearly by this court in the case of Landseidel v. Culeman, supra. In this case the jury made special findings in effect that Culeman, Schwenke and Junkers without probable or reasonable cause and maliciously for the purpose of attempting to extort money from the plaintiff caused the plaintiff to be arrested and confined in jail; that none of the defendants actually and in good faith believed that the plaintiff had committed any crime.

The defendant Culeman was the justice of the peace who, issued the warrant. The complaint was not approved by the state's attorney as required by § 19,135, but it appeared that the state's attorney had told the justice of the peace some time previously that he might issue warrants in minor cases where he thought a man should be arrested; that it would be all right with him and he would O. K. it. This court said:

"It is elementary that judicial officers are not liable for the erroneous exercise of the judicial powers vested in them. This immunity from liability is based upon considerations of public policy. To hold judicial officers personally liable for errors of judgment concerning either questions of law or fact would be subversive of both independence and efficiency in the administration of justice. This rule of public policy applies as well to inferior courts of limited jurisdiction as to superior courts of general jurisdiction. . . . If a judge acts within his jurisdiction, it has been held that he is not even liable to a party civilly though he act both maliciously and corruptly. Broom v. Douglass, 44 L.R.A.(N.S.) 164, and note (175 Ala. 268, 57 So. 860, Ann. Cas. 1914C, 1115)." See also Bradley v. Fisher, 13 Wall. 335, 20 L. ed. 646.

"Obviously if Culeman was acting judicially and within his jurisdiction, his belief as to whether or not Landseidel had committed some crime was immaterial, as it might have been his duty to issue the war-

rant nevertheless, or at least he might well have conceived it to be his duty. And if he regarded it as his duty to issue a warrant, neither the fact that he acted maliciously nor the absence of probable cause for the arrest, would render him personally liable. Broom v. Douglass, supra; 11 R. C. L. 815." [47 N. D. 282.]

The recent case of Watts v. Gerking, 111 Or. 641, 34 A.L.R. 1490, 222 Pac. 318, 228 Pac. 135, is an action against the state's attorney of Umatilla county, Oregon, for the wrongful issue of a search warrant. In that case the complaint alleged, that the state's attorney knew that plaintiff was innocent; that he falsely, and maliciously accused and charged, the plaintiff with the commission of a criminal offense, and caused the plaintiff to be prosecuted upon such false and fictitious charge and *that he "instigated others to swear falsely against the plaintiff, knowing at the time that the charge itself was a false, fictitious and a trumped-up one."* (The italics are ours.) The Oregon Court on the first hearing held that the complaint stated a cause of action but on re-hearing overruled and set aside former decision reported in 111 Or. 641, 222 Pac. 318, and held, that the prosecuting attorney, is not liable for the malicious prosecution of a criminal action, when the determination of the question whether or not to prosecute is within his official author-ity, two of the judges dissenting. The case law on the subject is cited and quoted at length in that case and in notes following, 34 A.L.R. 1504, and there seems to be only one case to the contrary, viz., Leong Yau v. Carden, 23 Haw. 362.

The following cases we think are especially in point as they relate to officers who are quasi judicial officers, viz.: "Fath v. Koeppel, 72 Wis. 289, 7 Am. St. Rep. 867, 39 N. W. 539, was a case against a fish inspector who was vested with power to determine the quality and whole-someness of fish offered for sale, and, if unwholesome, to condemn and destroy fish so offered. In that case the supreme court of Wisconsin, in sustaining the demurrer to the complaint in an action for damages, said: . . . 'The officer exercising such a power is within the protection of that principle that a judicial officer is not responsible in an action for damages to anyone, for any judgment he may render, however errone-ously, negligently, ignorantly, corruptly, or maliciously he may act in rendering it, if he acts within his jurisdiction. This principle is stated and given force in Steele v. Dunham, 26 Wis. 393, by the present chief

justice, to shield from liability members of an equalizing board, . . . who charged with liability for damages to the plaintiff for corruptly and oppressively increasing the valuation of certain property without proof. . . . This principle protects all officers exercising judicial powers, whatever they may be called. It is a judicial privilege,' and has 'a deep root in the common law,' and is found 'asserted in the earliest judicial records, and it has been steadily maintained by an undisturbed current of decision.' Yates v. Lansing, 5 Johns. 291. It is a discretionary authority, where the determination partakes of the character of a judi-cial decision. Druecker v. Salomon, 21 Wis. 621, 94 Am. Dec. 571, and other authorities." [111 Or. 662.]

In the case of Re Bentine, 181 Wis. 587, 196 N. W. 214, the court said: "A public prosecutor is a 'quasi judicial' officer retained by the public for the prosecution of persons accused of crime, in the exercise of a sound discretion to distinguish between the guilty and the innocent between the certainly and the doubtfully guilty."

In the recent casoe of Halladay v. State Bank, 66 Mont. 111, 212 Pac. 861, the Montana court said: "Where the prosecuting officer starts a criminal proceeding on full and fair statement of the facts from the ac-cuser, he acts for the state and so he does when proceeding on his own personal knowledge." Continuing the court said: "Generally it may be said that a prosecuting officer is charged with the duty of determining when to commence a particular prosecution, and when to discontinue it. He stands upon a different footing from a defendant, who goes to a justice of the peace, swears out a warrant, and directs the prosecuting officer to see to its execution. The county attorney in this state, not only directs under what conditions a criminal action shall be commenced, but from the time it begins until it ends his supervision and control is complete, limited only by such restrictions as the law imposes."

In the case of Laughlin v. Clawson, 27 Pa. 328, the court said: "If the officers of the state, who are appointed on account of their legal learn-ing, consider that a given state of facts is sufficient evidence of probable cause. . . . If such officers make a mistake, it is error of govern-ment itself, and government cannot allow the citizen to suffer for his trust in its proper functionaries. There are cases where the judgment of the lower grades of officers (Reynolds v. Kennedy, 1 Wils. 232, 95 Eng. Reprint, 591; Brooks v. Powers, 15 Mass. 244, 8 Am. Dec. 99;

Smith v. Macdonald, 3 Esp. 7, 170 Eng. Reprint, 519; Leigh v. Webb, 3 Esp. 165, 170 Eng. Reprint, 574; Ulmer v. Leland, 1 Me. 138, 10 Am. Dec. 48), and even of those who are not properly officers at all (Walter v. Sample, 25 Pa. 275; Williams v. Vanmeter, 8 Mo. 339, 41 Am. Dec. 644), is sufficient to establish probable cause. If the party prosecuted should suffer from such mistakes, he must bear it as one of those accidents for which in the nature of things there can be no redress, for the government cannot make the prosecutor suffer for the injuries which it has itself through mistake committed."

In the case of Downer v. Lent, 6 Cal. 94, 65 Am. Dec. 489, the court said: "It is beyond controversy that the power of the board of pilot commissioners is quasi judicial, and that they are not civilly answerable. They are public officers to whom the law has intrusted certain duties, the performance of which requires the exercise of judgment."

The case of Turpen v. Booth, 56 Cal. 65, 38 Am. Rep. 48, is a case against members of a grand jury and the court said: "I prefer to place the decision on the broad ground, that no public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which produced it. Such acts, when corrupt, may be punished criminally, but the law will not allow malice and corruption to be charged in a civil suit against such an officer for what he does in the performance of a judicial duty. The rule extends to judges, from the highest to the lowest, to jurors, and to all public officers, whatever name they may bear, in the exercise of judicial power."

In the case Yaselli v. Goff (C. C. A. 2d) — A.L.R. —, 12 F. (2d) 396, the complaint alleged, that the defendant willfully and maliciously conspired to get himself appointed as a prosecutor, in order that he might willfully and maliciously indict the plaintiff; that he had others, falsely and maliciously and without reasonable and probable cause did cause to be introduced and used before the grand jury a great mass of false, misleading and hearsay testimony, and thus unjustly, unfairly, and improperly influenced and poisoned the minds of the grand jurors upon which the defendant was indicted, tried, and at the close of the state's case, the court directed a verdict for the defendant who then brought a civil action for damages. In this action the court reviews the decisions at length. First those relating to judicial officers quoting from

Bradley v. Fisher, supra, as follows: "In other words, it (the plea) sets up that the order for the entry of which the suit is brought, was a judicial act, done by the defendant as the presiding justice of a court of general criminal jurisdiction. If such were the character of the act, and the jurisdiction of the court, the defendant cannot be subjected to responsibility for it in a civil action, however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff. For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. As observed by a distinguished English Judge, it would establish the weakness of judicial authority in a degrading responsibility."

From 2 Cooley on Torts, 3d ed. p. 795: "In effect, the state says to the officer that these duties are confided to his judgment; that he is to exercise his judgment fully, freely, and without favor, and he may exercise it without fear; that the duties concern individuals, but they concern more especially the welfare of the state, and the peace and happiness of society; that if he shall fail in the faithful discharge of them he shall be called to account as a criminal, but that in order that he may not be annoyed, disturbed, and impeded in the performance of these high functions, a dissatisfied individual shall not be suffered to call in question his official action in a suit for damages. This is what the state, speaking by the mouth of the common law, says to the judicial officer. The rule thus laid down applies to large classes of officers, embracing some the powers attached to which are very extensive, and others whose authority is exceedingly limited. It applies to the highest judge in the state or nation, but it also applies to the lowest officer who sits as a court and tries petty cases, and it applies not in respect to their judgments merely, *but to all process awarded by them for carrying their judgments into effect.*" (The Italics are ours.) This statement is followed in Yaselli v. Goff, supra, with the following statement:

"And the immunity which is extended to the judges is in like manner

extended to the attorneys in the presentation of the client's case to the court or the jury."

From Munster v. Lamb, L. R. 11 Q. B. D. 588, 7 Eng. Rul. Cas. 714—C. A., wherein the court said: "to my mind it is illogical to argue that the protection of privilege ought not to exist for a counsel, who deliberately and maliciously slanders another person. The reason of the rule is, that a counsel, who is not malicious and who is acting bona fide, may not be in danger of having actions brought against him. If the rule of law were otherwise, the most innocent of counsel might be unrighteously harassed with suits, and therefore it is better to make the rule of law so large that an innocent counsel shall never be troubled, although by making it so large counsel are included who have been guilty of malice and misconduct.

"Not only are the judges exempt, but grand jurors are in like manner exempt from actions for malicious prosecution. In 17 Am. & Eng. Enc. Law p. 1302, the law is stated as follows: 'However recklessly and maliciously a grand jury may have acted in returning an indictment against another without evidence or probable cause, the jurors are not liable to an injured person in an action for malicious prosecution.' . . .

"A public office is an agency for the state, the duties of which involve in their performance the exercise of some portion of the sovereign power, either great or small. The rule of responsibility of a public officer, as held by the courts, is said to be that, if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an erroneous performance, is regarded as an injury to the public, and not as one to the individual. It is to be redressed in some form of public prosecution, and not by a private person who conceives himself specially injured. 2 Cooley, Torts 3d ed. p. 756. In Thibodaux v. Thibodaux, 46 La. Ann. 1528, 16 So. 450, it is said: 'Officials in the performance of a duty imposed by law cannot be held in damages for acts done strictly within the lines of official duty.' " [— A.L.R. —, 12 F. (2d) 403.]

From Watts v. Gerking, 111 Or. 641, 34 A.L.R. 1489, 228 Pac. 135: "This doctrine being applicable to grand jurors, there is no good reason why it should not shield the prosecuting attorney from civil liability in the case at bar." And it was also said: "In reaching a decision, we are confronted with a determination that concerns public policy. We

are face to face with a law enforcing problem. Criminal law does not. enforce itself. It demands the assistance of valid evidence and fearless. officials to put it in execution. Because of their tendency to obstruct the administration of justice, it is the policy of the law to discourage actions for malicious prosecution."

Continuing in Yaselli v. Goff, supra, the court said: "The question whether the immunity which attaches, as we hold it does, to a prosecuting officer, applies to shield one who conspires willfully and maliciously to get himself appointed as prosecutor, in order that he may willfully and maliciously indict and prosecute the person he seeks to punish. In our opinion, the reasons which compel us to hold that one who obtains. an appointment as a prosecuting officer of the government is immune from civil liability for acts done by him in the discharge of his official. duties apply in like manner to protect him against such a charge as that he was governed by improper motives in securing the appointment. The important fact is that he was appointed to the office, and, having been. appointed, the public interests require that he shall be free and fearless. to act in the discharge of his official duties. If he cannot be charged with. acting willfully and maliciously after he gets appointed to the office, no. more can he be charged with having conspired to get into the office in. order to act willfully and maliciously after he gets his appointment.. The one charge is as much to be feared as the other, and is equally derogatory to his public character and usefulness in the office. We are. unable to distinguish between the two cases in principle."

In the case of Griffith v. Slinkard, 146 Ind. 117, 44 N. E. 1001,. there was a demurrer to the complaint the substance of which is quoted: by the court in part as follows: "It shows also that the grand jury returned the indictment without any evidence against the appellant. It shows that . . . there was no evidence tending to establish his guilt,. and that they voted not to indict him, and yet the appellee, as prosecuting attorney, maliciously wrote his name into the indictment without the. knowledge or consent of the grand·jury. And yet it is shown that it was. returned by the grand jury into open court and filed. This record must be held to import absolute verity that the grand jury did find and return into open court the alleged indictment. However reckless and malicious. the grand jury may have acted in returning an indictment against another without evidence or probable cause, they are not liable to the in-

jured person in an action for malicious prosecution.   Hunter v. Mathis, 40 Ind. 356.

"The question remains, is the prosecuting attorney any more liable for his alleged participation in procuring the indictment maliciously and without probable cause?   In State v. Henning, 33 Ind. 189, at page 191, this court said: 'The turning point in the case is this: Is a prosecuting attorney an officer intrusted with the administration of justice?   He is a judicial officer, created by the constitution of the State. 1 Gavin & H. 47, § 11.   He is the law officer of the court to whom is intrusted all prosecutions for felonies and misdemeanors.   2 Gavin & H. 430, § 4.   He is the legal adviser of the grand jury.   We think he is "an officer intrusted with the administration of justice." '  . . . 'Whenever duties of a judicial nature are imposed upon a public officer, the due execution of which depends upon his own judgment, he is exempt from all responsibility by action for the motives which influence him and the manner in which said duties are performed.   If corrupt, he may be impeached or indicted, but he cannot be prosecuted by an individual to obtain redress for the wrong which may have been done. No public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which produced it.'   Townsend, Slander & Libel, 3d ed. § 227, pp. 395, 396.

"It was held in Parker v. Huntington, 2 Gray, 124, that an action against a district attorney and another person for maliciously contriving to have the plaintiff indicted for perjury, they knowing that he had not committed it, and by their false testimony obtaining a verdict of guilty against the plaintiff, which was afterwards set aside, cannot be maintained.

"There is therefore no more liability against the prosecuting attorney than there is against the grand jury for the return of an indictment maliciously and without probable cause."

In the case of Smith v. Parman, 101 Kan. 115, L.R.A.1917F, 698, 165 Pac. 663, the court said:   "The public prosecutor, in deciding whether a particular prosecution shall be instituted or followed up, performs much the same function as a grand jury.   If, while he has a question of that kind under advisement, he is charged with notice that he may have to defend an action for malicious prosecution in case of a

failre to convict, his course may be influenced by that consideration, to the disadvantage of the public. . . .

"We think the reason for granting immunity to judges and grand jurors applies with practically equal force to a public prosecutor in his relations to actions to punish infractions of the law. There is no great danger that abuse of power will be fostered by this exemption from civil liability, for the prosecutor is at all times under the wholesome restraint imposed by the risk of being called to account criminally for official misconduct."

In the case of Schneider v. Shepard, 192 Mich. 82, L.R.A.1916F, 399, 158 N. W. 182, and Shaw v. Moon, 117 Or. 558, 45 A.L.R. 600, 245 Pac. 318, the officers were held liable, for the reason, that they did not use the machinery which the law had provided for the prosecution of criminals. In the first case, the state's attorney ordered an arrest without a complaint or warrant. In the second case, the justice of the peace issued a search warrant without the statutory affidavit. In each case the officer did not act in excess of his jurisdiction, but without any jurisdiction or authority in the law, and were therefore liable.

In the instant case, the state's attorney did not act without statutory law, but used all the machinery which the law provides.

In the case of Watts v. Gerking, supra, the complaint alleged, that the prosecuting attorney *instigated others* to swear falsely against the plaintiff, in an affidavit for a search warrant knowing at the time that the plaintiff was innocent.

In Yasseli v. Goff (C. C. A. 2d) — A.L.R. —, 12 F. (2d) 396, the complaint alleged, that the defendant conspired to get himself appointed as prosecutor in order that he might have the plaintiff indicted.

In Griffith v. Slinkard, supra, the complaint alleges, that the prosecuting attorney maliciously wrote the plaintiff's name into an indictment, after the grand jury had voted not to indict, and thus maliciously procured an indictment against the plaintiff. In each of these cases it is alleged, that the prosecuting officer instigated others to institute criminal proceedings, and the law makes no distinction between what one does personally and what he procures others to do. If a prosecuting attorney is liable for swearing to a complaint himself he would also be liable if he procured another to swear to the complaint.

In the instant case, if the state's attorney after deciding that the

evidence before him was sufficient had gone before a grand jury, and procured an indictment, he would not be liable, for the reason, that he is a public prosecutor, and it would be his duty to present the evidence to the grand jury.   It is none the less his duty to act on the evidence which he deems sufficient, in the absence of a grand jury, for the law substituting his office for the grand jury never intended that his immunity in the commencement of a criminal action should be less than that of a grand juror.

We cannot say, as the plaintiff contends, that the state's attorney, a public officer, sworn to enforce the criminal law, and charged with the duty of determining when to commence a prosecution and when to discontinue it, acted as a private citizen in the prosecution of the case.   The letters were mailed to him because he was state's attorney, and it is presumed that in the exercise of that discretion which the law reposes in him he acted as state's attorney in the institution of the prosecution, net only in passing upon the question of the sufficiency of the evidence before him, but also, in making a complaint before a justice of the peace upon which warrant might issue and make effective his decision that the evidence was sufficient.   Why does the statute give him, and him only, the authority to pass upon the evidence and say when a warrant shall issue ?   The authority is given to him, so that he may, in fact it is made his duty to commence a prosecution when in his judgment the evidence is sufficient, and it would be ridiculous to hold that after deciding that evidence was sufficient, that he could only make complaint *on that evidence at his peril.*   As Judge Cooley said and as herein before quoted : "It [the principle] *applies not in respect to their judgments merely, but to all process awarded by them for carrying their judgments into effect."*

The state's attorney acts for the state.   His act in passing upon the sufficiency of evidence as the basis of a criminal prosecution is the act of the state, and if he makes a mistake (as he sometimes will) it is the mistake of the state.   Judges of all courts, high and low, county commissioners, justices of the peace and grand jurors are not liable in a civil action for their judicial mistakes, and it would be strange indeed if the state's attorneys of this state, who are *charged with the responsibilities of grand jurors in the prosecution of crime, in their respective counties, are not exempt from civil liability for judicial mistakes.*

The first letter received by the state's attorney, charged the plaintiff with a continuing crime, and further stated, "that if you don't see to it, and get her out of town there is a Women's Club in town that will either lynch or tar and feather her." It was not only a statement of the commission of a continuing crime, but a threat of disturbance of the public peace, and of violence against the plaintiff.

The second letter purporting to be signed by the plaintiff amounted to an admission of guilt, and was further a plea in extenuation, or excuse, an appeal to the state's attorney for protection, or at least for noninterference.

If the letters were true, action should be taken immediately for threats of violence were made, the public peace was threatened.

The doctrine of exemption of judicial and quasi judicial officers, is founded upon a sound public policy, not for the protection of the officers, but for the protection of the public, and to insure the active and independent action of the officers charged with the prosecution of crime, for the protection of life, and property. It applies to the office of the state's attorney in this state.

Since the enactment of chapter 71, Sess. Laws 1890, p. 246, prosecutions by indictment are almost obsolete. The burden of investigation, formerly made the duty of grand jurors, has by legislative enactment been made the duty of the state's attorney and when he passes judgment on the sufficiency of the evidence before a justice of the peace before approving the issuance of a warrant, or upon the sufficiency of the evidence within his own knowledge the passing of such judgment is a judicial act, and he is not liable therefor in a civil action if he makes a mistake, or for having process issued to make effective his decision.

The fact that the law gives the state's attorney power to subpoena witnesses in the investigation of infractions of certain laws, does not make it any less his duty to use all the machinery the law places in his hands for the enforcement of other laws where he has not such power. The reasoning that the state's attorney after passing upon the sufficiency of the evidence before him may not make complaint himself without liability, but may have some other person make the complaint on the same evidence without liability simply leads to an absurdity.

The judgment of the lower court is affirmed.

Nuessle and Birdzell, JJ., concur.

Burr, J. I am compelled to dissent in this case. I have no quarrel with the principles set forth in the syllabus. As an abstract proposition this may be correct, though the phrase "the sufficiency of the evidence within his own knowledge" may be open to discussion as to whether it refers to the complaint or to his official actions in the prosecution. The issue involved in this case is—May the state's attorney swear positively to a complaint on his own initiative and be free from liability without regard to truth or falsehood?

The complaint shows that the defendant, as state's attorney, received an anonymous letter charging the plaintiff, a reputable woman, with maintaining a disorderly house and with adultery. Later he received another letter, purporting to be signed by her, in which the truth of the charges were rather defiantly admitted. Neither of these communications was sworn to. Upon this information, and this alone, with no further investigation, he instituted criminal proceedings against the plaintiff, making the complaint himself and swearing to it positively. She was arrested and brought into court, and thereafter the case was dismissed. The record shows that after her arrest the defendant learned that there was absolutely no truth in the charges and that her name had been forged to the letter of admission. He was concerned and chagrined in being thus imposed upon and most honorably made what amends he could make in the way of public announcement for the irreparable injury inflicted upon the plaintiff. She was not satisfied with this determination of the matter and brought this action, setting forth these facts, and the defendant has demurred to the complaint. The district court sustained the demurrer and plaintiff brought this case here on appeal from the order. The opinion of the majority holds she can have no redress in this case.

The basic weakness of this decision, as I see it, is the failure to differentiate between the state's attorney making the complaint himself, and the state's attorney passing judicially upon an affidavit or complaint presented to him. The majority opinion is concerned with his judicial determination in passing upon the sufficiency of the complaint after it is sworn to and presented to him as an officer. I agree heartily with all that is said regarding the exercise of this judicial power. He

cannot be held liable for the exercise of this power no matter how flagrantly it may be abused. The enforcement of law and the maintenance of order and security require that any officer entrusted with judicial power in passing upon complaints shall be untrammeled, and the possible abuse of this power must not weigh against the right of society to have officers free from possibility of suits because of erroneous judgment. All this is admitted. It is not the act of the state's attorney in passing upon the sufficiency of the complaint in its form which is in issue here. It is the act of the individual in swearing to the complaint which is the basis of this action. Making such statements and swearing to them is not an exercise of *judicial* power—the judicial power is the passing on them after they are made. The question of motive is not involved, nor of actual knowledge. He is not charged with erroneous judicial determination of how to act on a complaint submitted to him as state's attorney, but for what he said in the complaint and for the results proximately caused thereby. This court has already passed upon the question of actual knowledge of facts stated in a criminal complaint in the case of State v. Ramsey, 31 N. D. 626, 154 N. W. 731. Here the court shows that so long as the complaint is regular on its face and verified positively it complies with the constitutional requirements of this state. The complainant may have no knowledge of the facts regarding which he set forth therein. Nevertheless if the complaint be regular on its face it is a sufficient basis for criminal proceedings. The defendant as state's attorney was required to pass upon the regularity of the complaint which he himself made. This was his judicial act, but the issue is the step before this—it is as to the truth of the charges made therein. In setting forth and swearing to these alleged facts he is acting the same as any individual would act, and after having furnished the information he then acts as state's attorney in determining whether it is a regular and proper basis for prosecution. The argument set forth in the majority decision does not touch the question at issue, it seems to me.

Stress is laid upon the immunity given a grand juror and authority is cited showing that such grand juror cannot be held liable. Of course, he cannot be held liable. He is passing judicially upon facts presented to him by some one else, and saying whether he thinks they are a sufficient basis for an indictment. He is passing upon the quality of the

proof furnished him, but it is furnished by sworn statements of others, or legal proof of some character. It would be entirely different if the juror were the witness. Our statute permits a juror to be a witness and in case he knows anything in regard to the matter under investigation he must declare it to his fellow jurors and they,—not he,—must investigate the same. Section 10,663 of the Code.

The majority opinion enters into an analysis of the statutory powers of the state's attorney. It is beside the point to argue that the state's attorney, on information and belief, files an information charging defendants with felonies. In all cases provided for in the statute he must have a basis for such information. Generally he has the preliminary examination, and proceedings had in justice court which are based upon a sworn complaint. Information and belief alone is never a sufficient foundation for an information or a complaint. It certainly needs no citation of authority to substantiate this statement. The rules laid down in State v. McKnight, 7 N. D. 445, 75 N. W. 790; State ex rel. Register v. McGahey, 12 N. D. 535, 97 N. W. 865, 1 Ann. Cas. 650, 14 Am. Crim. Rep. 283; State ex rel. Harvey v. Newton, 16 N. D. 151, 112 N. W. 52, 14 Ann. Cas. 1035, show this. Section 18 of the constitution which provides "the right of the people to be secure in their persons . . . against unreasonable . . . seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, particularly describing . . . the persons . . . to be seized," safeguards the rights of the individual. Therefore in the analysis given of the powers of the state's attorney the reference to subdivision 2 of § 10,628 cannot be interpreted to mean that the State's Attorney may file an information sworn to on information and belief with reference to a crime committed during the continuance of the term of the district court even though § 10,632 permits verification on information and belief. Where he files such an information verifying it on information and belief he must have a complaint sworn to positively as a basis, or some other similar proof. His judicial functions are confined *to the passing upon the quality of the sworn testimony furnished.* The majority of this court dwell at length on the provisions of § 10,535 as showing that in contemplation of law the state's attorney may himself file a complaint with the justice. This section, says the justice, need not submit such complaint to the state's attorney before a warrant is

issued. The law does not require any idle ceremony. The purpose of submitting the complaint to the state's attorney is to get his judicial determination on it and his approval of the issuance of a warrant. The justice did not need to do this where the state's attorney files the complaint himself. This section does not say that in making that complaint himself the state's attorney is acting judicially, or that he may file a complaint on information and belief on his own initiative, without any supporting basis. The analysis of § 3376 throws no light on the subject. This prescribes the duties of the state's attorney and requires him to "institute proceedings . . . for the arrest of persons charged with . . . public offenses, when he has information that such offenses have been committed." This does not mean he can go and institute proceedings any time some one tells him a story. He must have a basis for his action. The analysis of § 10,629 adds nothing to this case. This section has reference to a situation where a person has been charged with crime based upon a proper complaint and has been held to answer to the district court. In such case the state's attorney may file an information for any offense disclosed; but this information of his is based upon a sworn complaint and the testimony taken. It is true in the case at bar the state's attorney proceeded on a sworn complaint; but he is not being sued because of any erroneous judicial determination as to the form of complaint which he used as a basis for the prosecution or the legal sufficiency of its allegations. Section 10,632 cannot change the constitutional provision.

When the state's attorney makes his own sworn complaint as a basis for his official act he is not in a situation different from that of a private citizen. That this is the theory of our criminal procedure is shown in § 10,108, which abridged reads as follows: "Section 10,108. If the state's attorney of any county shall be notified by any officer or other person or be cognizant himself of any violation of any of the provisions of this chapter, it shall be his duty forthwith diligently to inquire into the facts of such violation and for such purpose he is hereby authorized and required to issue his subpœna for such person or persons as he may have reason to believe have any information or knowledge of such violation, to appear before him at a time and place designated in such subpœna, then and there to testify concerning any violation of this chapter. . . . Each witness shall be sworn by the state's attorney to testify the

truth, the whole truth and nothing but the truth, and true answer made to all questions which may be propounded to him by such state's attorney touching any violation of the provisions of this chapter. The testimony of every such witness shall be reduced to writing and signed by such witness, as in the taking of depositions in civil cases. . . . If the testimony so taken shall disclose the fact that an offense has been committed against any of the provisions of this chapter, the state's attorney shall forthwith file such statement, together with his information against the person having committed the offense, in some court of competent jurisdiction, and such statement or testimony, together with the information of such state's attorney when verified by him on information and belief, shall have the same effect as if such information had been verified positively."

Here, if anywhere in the Code, the state's attorney is charged with the duty of filing informations against those charged with violation of this law. To give the officer a basis for his act he files with his information the testimony or the statement or the deposition of the witness examined. In passing upon the sufficiency of these he acts judicially and his motive cannot be questioned. His motive is never involved when he is acting officially.

This section suggests two features worthy of note. In effect it gives to the state's attorney inquisitorial powers, somewhat similar to those conferred upon the grand jury, but these are limited to what is known as the prohibition law (Comp. Laws 1913, §§ 10,092 et seq, as amended). This section is a clear recognition on the part of the legislature of the necessity for conferring such new duties upon the state's attorney and investing him with the powers described in the section; but these inquisitorial powers so granted are limited to the violations of this law. In this connection we may state it is a matter of common knowledge that the legislature at the last three sessions refused to enlarge the scope of said powers, either by authorizing the filing of information without testimony as a basis, or by extending the range of inquiry to all crimes. In the former case the legislature is prevented by the constitutional provision already cited; in the latter case, where it is a matter of judgment of the legislature as to the wisdom or necessity, it has refused to proceed further in the matter of such grant.

The next point noticeable is that notwithstanding the fact the legis-

lature confers these inquisitorial powers in prohibition cases, there is no provision made for the state's attorney to make any complaint himself on information and belief, unless the same is based upon the sworn testimony of some one else. He does not take the place of the grand jury to this extent. He does pass upon the quality of the testimony secured by his examination, but he does not furnish the testimony himself.

Again, if the state's attorney may, with immunity, file his own complaint, what need is there even in Prohibition cases for him to file the testimony secured from others? Would it not be enough for him to know what others swear to? If in this case he is immune when he acted on rumor or gossip, why the necessity for filing the testimony taken under § 10,108? Does it not mean the legislature recognized the danger to the prosecuting officer, and thus furnished a basis for him, where, if he made a mistake, it would be a judicial one—in passing on the quality of the proof— and thus relieve him from liability?

This court has had occasion in the past to pass upon the duties of a state's attorney in reference to this law. Re Simpson, 9 N. D. 379, 83 N. W. 541, involved the duty of the state's attorney to file information under § 10,111, which at that time was § 7604 of the Revised Code. At page 396 this court quoted a portion of said statute and showed what was the duty of the state's attorney but nowhere intimates there is immunity on the part of the state's attorney in making his own sworn statement, under § 10,108, which was then numbered 7601. Re Voss, 11 N. D. 540, 90 N. W. 15, is another case dealing with the duties of the state's attorney under a similar section. Our statute makes it the duty of the state's attorney when he has knowledge of the violation of the law against gambling to file his information against the offender and at page 549, the court said: "The statute contemplates that he shall make a complaint himself. In this class of cases he must become informant and prosecutor when he has knowledge of guilt or credible reason to believe that such offense has been or is being committed. The section imposes an unusual duty upon state's attorneys—one requiring them under penalties, to institute criminal proceedings in such cases." Here we have two cases where this court passed upon the only two sections of the law which explicitly make it the duty of the state's attorney to be informant and prosecutor. In the former case it makes provision for the testimony of others to be taken and used as a basis for his crimi-

nal information. In the second case it is silent as to how he is to file his information but it does not say either that he may make it on information or belief or that if he makes his own sworn statement he is immune. A reading of this latter section which is now § 9686 of Comp. Laws clearly intimates that some one furnishes him "credible reason to believe" or that he knows the facts himself, and can furnish his own testimony. If he has no actual knowledge so that he knows only on information and belief there are methods provided whereby he can get the basis for his information. He can have a grand jury called. If he knows the facts himself so that the defendant is convicted there would be no liability, and this would be such "credible reason to believe" that no action could lie. But it is only with reference to this crime he has such duty, and this duty required by the statute, would be his protection. That he assumes liability in making complaint himself, is intimated in the latter case cited for the court says: "By accepting the office of state's attorney, this duty is assumed, as well as other and more agreeable duties." Nowhere else in our code can it be said the state's attorney as an officer is required by law to make a sworn complaint himself on his own initiative. Provision is always made to provide him with a basis for his information or official charge. True, he may make such a complaint himself the same as any other private citizen. Thus in the attempted recital of the duties of the state's attorney we do not find anything further which requires him as an official, to make a sworn complaint with no basis other than his own statements. At times he is required to proceed when sworn statements are furnished him, and at times methods are devised whereby he can compel and secure this sworn testimony. Hence the assumption that because he is required to institute proceedings he is immune for his statements which he himself makes not backed up by any sworn evidence, falls to the ground.

An analysis of the cases cited show they are not in point. The majority cite the case of Watts v. Gerkin, 111 Or. 641, 34 A.L.R. 1489, 222 Pac. 318, 228 Pac. 135, as authority for the decision reached; but it will be noted in this case cited that there was an affidavit furnished by some one other than the officers, and the court is concerned with his judicial passing upon this affidavit. The case of Schneider v. Shepherd, 192 Mich. 82, L.R.A.1916F, 399, 158 N. W. 182, is dismissed rather cavalierly by the majority; but it is more in point than it is given credit

for. The opinion of the majority says: "The acts of the state's attorney were entirely outside the authority given him by the statute. He did not act under the law and therefore the arrest and imprisonment was false imprisonment for which the attorney was liable, the same as any other individual." Wherein did he not act under the law? In not having a complaint sworn to by someone else. On the basis of oral information from some undisclosed person he proceeded to act just as the defendant did in this case only the defendant here took the precaution of reducing his gossip to writing and swearing to it himself, whereas in the Michigan case the prosecuting officer took his gossip straight. It is said that because he acted without a complaint it was false imprisonment and therefore the prosecuting officer would be liable; but it is immaterial what it was, if he be immune from any act he performs as state's attorney in the institution and prosecution of a criminal case. If in this case the defendant as the individual K. may swear to an information for the benefit of the state's attorney K. then in the Michigan case the individual Shepard could tell the prosecuting attorney Shepard some facts. If the attorney Shepard in the Michigan Case was mistaken when he acted judicially in determining he could proceed on an oral complaint made by himself to himself based on the information received from somebody else, why is not the defendant in this case mistaken in determining that he could act upon a written complaint made by himself to himself based upon information given by unknown parties?

In the case of Landseidel v. Culeman, 47 N. D. 275, 13 A.L.R. 1339, 181 N. W. 593, the Justice was passing judicially upon a complaint made by another. It was correct as to form, so he issued a warrant. In doing this he acted judicially and could not be sued, even though he may have believed the complaint was in fact false.

The case of Smith v. Parman, 101 Kan. 115, L.R.A.1917F, 698, 165 Pac. 663, is dealing with a prosecuting officer in carrying on a prosecution upon a complaint submitted to him—not the question of liability for making the complaint himself—and follows in principle the case of Griffith v. Slinkard, 146 Ind. 117, 44 N. E. 1001, cited in the majority opinion. In this Indiana case we have an action for malicious prosecution against the prosecuting attorney and the action was dismissed, but the charge was that the prosecuting attorney had prepared the indictment for the grand jury, which indictment the plaintiff said was based

upon insufficient or no legal evidence. It will be noted, of course, the prosecuting attorney did not make the complaint.

Turpen v. Booth, 56 Cal. 65, 38·Am. Rep. 48, is a case where the defendants, as members of a grand jury, in passing on evidence submitted to them as grand jurors, voted to indict. Plaintiff tried to show that the defendants had maliciously indicted. Of course, he could not. They were passing judicially on evidence presented to them—they were not presenting evidence themselves.

Downer v. Lent, 6 Cal. 94, 65 Am. Dec. 489, was an action for damages brought against the defendants, the pilot commissioners, who had notified plaintiff to surrender his license as a pilot and caused an official notice to be published to the effect that his license had been cancelled. In doing so they acted on evidence presented to them and were not liable for their judicial determination as to how they should act. I do not find in that case the second paragraph apparently quoted. The principle therein stated is undoubtedly correct but does not affect the real issue here.

The case of Fath v. Koeppel, 72 Wis. 289, 7 Am. St. Rep. 867, 39· N. W. 539, was an attempt in a civil action to hold a fish commissioner responsible because, in the exercise of his official duties, he had ordered a certain consignment of fish to be destroyed as spoiled. It was a judicial determination based upon the evidence of the fish themselves and his construction as to whether or not they were spoiled. He was not liable for this even if he was in error in his construction.

The case of Re Bentine, 181 Wis. 579, 196 N. W. 213, merely discusses methods so far as the prosecuting attorney is concerned. There is nothing in that case to show that the information which he filed is not based on the sworn testimony of some one else. Bentine had been convicted of crime and asked a writ of habeas corpus. The court is construing a law where it is possible for the prosecuting attorney to file informations varying in degrees and crimes. He had judicial discretion as to what offense he would charge, and he exercised it. He could not be called in question because he had the power to exercise such discretion so as to favor one individual and harrass another. The Court is discussing his judicial discretion as to what charge he will lay against the defendant. It is not discussing any liability based upon a complaint which he made himself.

From the extract in the majority opinion taken from Halladay v. State Bank, 66 Mont. 111, 212 Pac. 861, one might infer the prosecution complained of was instituted by the prosecuting attorney, for the quotation in the majority opinion says; "where the prosecuting officer starts a criminal proceeding on full and fair statement of the facts from the accuser he acts for the state, and so he does when *proceeding on his own personal knowledge.*"

An examination, however, shows that this case cited was an action for damages, brought because of an arrest, and the complaint in the criminal case was not made by the prosecuting officer but by the officers of the bank. These officers had submitted the case to the prosecuting attorney and the prosecuting attorney had commenced the criminal proceedings on the complaint furnished him. In addition thereto he had made a personal investigation and the court is passing upon his powers to commence and discontinue prosecution. When the Montana court says: "So he does when proceeding on his own personal knowledge," it has in mind the personal knowledge which the officer had which caused him to discontinue the prosecution. The portion of the syllabus and of the opinion quoted in the majority opinion is dealing with the supplemental knowledge of the prosecuting officer which he had and which was or may have been an inducing cause for his conducting the prosecution and later for its discontinuance.

The citation from Laughlin v. Clawson, 27 Pa. 328, has no bearing here in the light of the case itself. The question there was whether the action of the official in passing upon a complaint presented to him was such "probable cause" as constitutes a defense in an action for malicious prosecution brought by Clawson against Laughlin. Laughlin had consulted the district attorney regarding the loss of money and furnished this officer with such information so that the officer instituted proceedings against Clawson charging him with larceny. The grand jury ignored the bill and Clawson brought action against Laughlin for malicious prosecution. The court held that the trial court should have charged the jury fully on "probable cause" and says that this action "cannot be sustained, if an officer of the state, appointed because of his legal learning, considers that a given state of facts is sufficient evidence of probable cause." It needs no argument to show this case throws no light on the subject under discussion for the officer in the case cited was

passing judicially upon "a given state of facts" furnished him by Laughlin. It is merely the question of whether the advice of counsel constitutes "probable cause." The district attorney, for giving his advice on a given state of facts could not be held liable; but this action was not against the officer, it was an action brought against the complainant.

The case of Shaw v. Moon, 117 Or. 558, 45 A.L.R. 600, 245 Pac. 318, does not aid the majority opinion. In the case cited the justice acted without any affidavit, either in form or in substance, and was held liable. Had he acted on an untrue affidavit he would not have been held liable. Such is the gist of the holding. Certainly he would not have been liable, for his passing upon the sufficiency of an untrue affidavit submitted would have been a judicial act; but, and here is the reason the case is not in point, this affidavit would have been furnished by someone else, and this "someone else" would have been liable for the untrue statements. It is not a case where the Justice made the affidavit himself. He acted without *any* affidavit and was held liable. Had he made the affidavit himself and it was false, why would he not have been liable the same as if there were no affidavit?

The majority opinion cites Yaselli v. Goff (C. C. A. 2d) — A.L.R. —, 12 F. (2d ed.) 396. Here the grand jury had returned an indictment against the plaintiff. The defendant, as special assistant to the attorney general of the United States, was active in getting together the evidence for the grand jury and on this evidence the plaintiff was indicted. In this civil action the charge was that the assistance to the grand jury was rendered maliciously, knowing the charges to be untrue. When we analyze the case upon which the plaintiff was indicted we find the defendant did not make any affidavit, nor did he testify. He did not furnish any evidence by affidavit or otherwise. He secured witnesses, had them examined, and then left it to the grand jury to pass on the quality of the testimony furnished. Of course, he was not liable. Had he gone before the grand jury himself and sworn to testimony and then had the grand jury indict, while he would not have been liable for advice in passing upon the quality of the testimony, he would have been liable for his false swearing, the same as any other individual. It seems to me we must differentiate between a man swearing to statements himself and then passing judicially upon whether the statements if true will

be sufficient. In the latter case he would not be liable. In the former case he would.

The case of Bradley v. Fisher, 13 Wall. 335, 20 L. ed. 646, does not support the position taken by this court. Here was a case in which the defendant Fisher, as justice of the supreme court of the District of Columbia, attempted to punish the plaintiff for contempt of court in threatening the said justice "during the process of the trial of John H. Suratt (in the criminal court) for the murder of Abraham Lincoln," the contempt being based upon the actions of the plaintiff in accosting the justice just as the court had announced a recess and as the justice was descending from his bench. The justice disbarred the plaintiff. Plaintiff began proceedings for restoration, and was successful therein. He then commenced this action for damages but the supreme court held he could not recover. The justice was judicially passing upon his right as judge of each court to discipline the plaintiff. When the defendant disbarred the plaintiff he should have acted as judge of the criminal court but his order disbarring the plaintiff came from the supreme court of the District. The Supreme Court of the United States held that "the criminal court of the District was at that time a separate and independent court and as distinct from the supreme court of the District as the circuit court is distinct from the Supreme Court of the United States," therefore when the defendant in his subsequent action as judge of the supreme court of the District disbarred the plaintiff he was doing it upon what had occurred in the criminal court. No hearing was had in the supreme court of the District. Plaintiff was restored as a lawyer because of this failure. He then commenced his action to recover damages, but the Supreme Court of the United States held that though the justice in attempting to act as judge of the supreme court of the District in the disbarment of the plaintiff, because of what occurred in the criminal court, had made a judicial error, yet because he was acting judicially though misinterpreting his powers the action for damages could not be maintained. The quotation from this case in the majority opinion is not in point. The defendant assumed when he disbarred the plaintiff that he was at that time acting as judge of the criminal court whereas as a matter of fact the Supreme Court of the United States found that he was acting as judge of the supreme court of the District. But wherever it was, it was a judicial act, and for this as the court says: "The

56 N. Dak.—17.

defendant cannot be subjected to responsibility for it in a civil action." We note the evidence upon which he acted was not furnished by himself, it was furnished by the plaintiff. There is no statement in the decision of the Supreme Court of the United States that this evidence was not sufficient to have punished the plaintiff, in fact the intimation is that it was sufficient, but one court cannot summarily disbar a lawyer for what took place in another court—it can only summarily disbar for what took place in the court itself.

The majority decision contains a quotation from Munster v. Lamb, L. R. 11 Q. B. Div. 588, 7 Eng. Rul. Cas. 714—C. A. This was a case where a lawyer in "an inquiry before a judicial tribunal" was said to have uttered defamatory words against the plaintiff "maliciously and not with the object of supporting the case of his client—without any justification or even excuse, and from personal ill will or anger" towards the plaintiff. The plaintiff "a barrister at law" had caused an "inquiry before a judicial tribunal" to be had against one H. on a charge of having administered "drugs to the inmates of M's house in order to facilitate the commission of a burglary." The defendant appeared as solicitor for H. and during the course of the trial the solicitor was said to have uttered the defamatory words and thereupon the plaintiff brought a civil action against him for damages. It was held he could not recover as the solicitor was immune from liability for what he said in the discharge of his duty as counsel for his client. The case was decided upon the theory that whatever was said in the trial of the case, whether by the judge or lawyer or party or witness, could not be made the subject of a civil action. It was not because he was a lawyer that the action did not lie, but because it was said in the trial of the case and this immunity extended to witnesses, for as the Master of the Rolls said:

"Certain persons can claim the benefit of the privilege which arises as to every thing said or written in the course of an inquiry as to the administration of the law, and without making an exhaustive enumeration I may say that those persons are judges, advocates, parties, and witnesses."

The rule is entirely different from the one contended for here, for if the rule sought to be applied here protects the lawyer then under the

authority of the same rule it should protect anyone who made an affidavit for it is the duty of every one to see that criminal laws are enforced and there never could be an action upon a false affidavit. The quotation from the English decision, given in the majority opinion, applies equally well to witnesses for in the same opinion Lord Justice Frye said:

"The rule of law exists not because the conduct of those persons ought not of itself to be actionable but because if their conduct was actionable actions would be brought against judges and witnesses in cases in which they had not spoken with malice, in which they had not spoken with falsehood," and then shows that this same quotation which is set forth in the majority opinion applies equally well to witnesses while they are testifying. The majority opinion says "in the instant case if the state's attorney after deciding that the evidence before him was sufficient had gone before a grand jury" he would not have been liable if an indictment had been secured for the reason that he was "a public prosecutor and it would be his duty to present the evidence to the grand jury" and then goes on to state that "it is none the less his duty to act on the evidence, which he deems sufficient in the absence of a grand jury." That is correct. If some one had claimed to have evidence it would have been his duty to present this evidence to the grand jury, and if he had taken this witness before the grand jury and the grand jury had returned an indictment on this evidence he would have been immune, even if he thought it false, or knew it to be false. He would also have been immune if some one else had sworn to the exact statements he set forth and presented the affidavit to him. That is not what this case is about. It is not because he passed judicially upon the weight of the evidence, but it is because he himself swore to statements alleged to be untrue. We must remember this case is before us on demurrer. In defense or justification he might show the statements were true, or that he had probable cause to believe them true, or that he acted without malice. His judicial act would not be involved and the case would be limited to the making of the complaint. The majority opinion will lead to the conclusion that when the law makes it the duty of any officer, either administrative or quasi judicial to institute criminal proceedings he is always acting

judicially and therefore he is immune from suit in all cases where he commences these prosecutions no matter what he does.

That the prosecuting attorney may be sued for malicious prosecution in himself instituting, or being a party to the institution of, criminal proceedings is shown in Carpenter v. Sibley, 15 Cal. App. 589, 119 Pac. 391. While the defendants, the sheriff, the district attorney and the assistant district attorney, were successful in this case it was not because of immunity, but because of the failure of plaintiff to show want of probable cause and failure to show conspiracy.

The case of Buhner v. Reusse, 144 Minn. 450, 175 N. W. 1006, shows the prosecuting officials charged with instituting prosecution for violation of law, did not have the immunity claimed for them. R. was president of the council, T. was the village attorney, and M. was the village marshal of the village of Fulda. The plaintiff was arrested upon the complaint of the village marshal, for the violation of a village ordinance in selling goods without a peddler's license, and the marshal made complaint upon the direction of R. the president of the council while T. took charge of the prosecution. All three were sued for malicious prosecution and while the action was dismissed it was dismissed for failure to show want of probable cause, not because of immunity.

In the case of Skeffington v. Eylward, 97 Minn. 244, 114 Am. St. Rep. 711, 105 N. W. 638, we find that by law it was made the duty of the board of supervisors to prosecute all persons violating certain laws with reference to highways. This conferred upon him a certain amount of judicial discretion; but it was held that an action would lie against him for malicious prosecution if want of probable cause is shown.

Here the court says:

"It is further urged on behalf of the defendant that because it was his official duty to prosecute all persons violating the provisions of the Statute (Gen. Stat. 1894, 1863) relating to the obstruction of public highways he is not liable for a mistake of judgment, even if another has suffered by the mistake. If he acted upon probable cause, this would be true, otherwise not. The fact that he acted in his official capacity in making the complaint, as the jury were instructed, is a matter to be considered by them in determining the question of probable cause." That is the principle for which I contend in this case.

I am loathe to take a position which would appear to hamper the speedy enforcement of law, but I cannot bring myself to support a contention which would allow a state's attorney to put down in writing and swear to anything he saw fit and thus bring reputable people into the unenviable situation of being charged with and arrested for crime. Even a grand jury cannot do this. It must have testimony from others. If the view of the majority be correct then any state's attorney may sit down any time, draft a complaint and therein state anything he sees fit regarding any person in the state, or charge any crime he wishes, and though it is found to be just as false as was the charge in this case where a reputable woman was charged with adultery and other offenses, yet he would be immune from suit because after he had made the complaint he submitted it to himself as state's attorney and passed judicially upon whether or not it was in form a sufficient basis for prosecution. I grant that if some one else would furnish him with that same sworn statement the state's attorney would be immune, even though he acted upon it having reason to believe it was false. This would be in the exercise of his judicial powers and he is answerable to no one for that. I believe our law contemplates the prosecuting officer must have some reasonable ground for believing the information furnished him is true before he makes the complaint himself. It was a question for the jury to determine whether he had reasonable cause for believing the statements which he swore to were correct and whether want of probable cause is shown.

What would be probable cause in an action against the prosecuting officer who made the complaint himself need not be determined in this case. There is a vast difference between saying the officer is absolutely immune when he makes the complaint and determining what would be probable cause as a defense when he makes the complaint. If making the complaint himself is always probable cause then, of course, he would always be immune.

If a sworn affidavit made by some one else had been attached thereto, that would be conclusive. True, it might be said the state's attorney could get some one to sign a false affidavit, and thus permit his own malice to have free scope. There are contingencies against which the law cannot provide; but in that case the person who made the false affidavit could be prosecuted. The decision of this court would prevent

the injured person from redress in such case simply because the officer wrote it down himself and swore to it himself—the private citizen K. talking to the official K. renders the official K. immune. It seems to me that where the official K. undertakes to act as the individual K. he is subject to the same liability as any other individual. I believe the judgment of the lower court should be reversed and the demurrer overruled. I am authorized to say Judge Christianson joins with me in this dissent.

CHRISTIANSON, J., concurs in dissenting opinion.