## WALTER HUNTINGTON v. ELIAS H. GAULT.

*Malicious prosecution—Probable cause—Advice of counsel.*

1. When the facts are undisputed, want of probable cause is purely a question of law.

2. In a suit for malicious prosecution, the *undisputed* evidence showed that the defendant, by himself and by disinterested witnesses, placed *all* of the facts upon which his complaint against the plaintiff for perjury was predicated before the prosecuting attorney, who advised such criminal prosecution, and that defendant acted upon such advice in making the complaint. And it is held that the jury should have been instructed that the plaintiff had failed to show that there was a want of probable cause to make the complaint.[1]

Error to Kalamazoo. (Buck, J.) Argued April 29, 1890. Decided June 6, 1890.

Case for malicious prosecution. Defendant brings error. Reversed. The facts are stated in the opinion.

*Hampden Kelsey,* for appellant, contended:

1. Defendant's second request should have been given. If the plaintiff failed to show that there was no probable cause for making the complaint, his action must fail, even if defendant acted maliciously in making it; citing *Hamilton v. Smith*, 39 Mich. 222; *Jacks v. Stimpson*, 13 Ill. 703; *Israel v. Brooks*, 23 Id. 575.

2. A *non-pros* is not *prima facie* evidence of a want of probable cause; citing *Roberts v. Bayles*, 1 Sandf. 47; nor is a judgment of acquittal; citing *Scott v. Simpson*, Id. 601; *Bitting v. Ten-Eyck*, 82 Ind. 421; nor the fact that the grand jury dismissed the charge on which the plaintiff was arrested; citing *Ganea v. Railroad Co.*, 51 Cal. 140. See, also, *McBean v. Ritchie*, 18 Ill. 114; *Thompson v. Rubber Co.*, 56 Conn. 493.

3. If the complainant submits his case fairly to a competent lawyer, and is advised that there is probable cause, he is pro-

---

[1] See *Peterson v. Toner*, 80 Mich. 350.

tected; citing 2 Greenl. Ev. § 459; *Stanton v. Hart*, 27 Mich. 541; *Smith v. Austin*, 49 Id. 289.

4. When the facts are undisputed, the want of probable cause is for the court; citing *Heyne v. Blair*, 3 Thomp. & Cook, 264; *Moore v. Railroad Co.*, 37 Minn. 147; *Gilbertson v. Fuller*, 40 Id. 413.

5. Malice, in the law, does not presuppose personal hatred or revenge; citing 1 Hill. Torts, (2d ed.), 513, § 24a.

*Dallas Boudeman*, of counsel, for appellant.

*James H. Kinnane*, for plaintiff, contended:

1. Evidence of what was testified to in the former suit is inadmissible for the purpose of showing probable cause; the witnesses must be produced; citing *Burt v. Place*, 4 Wend. 591.

2. The commencement of a criminal prosecution to collect a private claim is an abuse of process, and is strong, if not conclusive, evidence of malice, and the advice of counsel is no protection; citing *Gallaway v. Burr*, 32 Mich. 335; *Prough v. Entriken*, 11 Penn. St. 84; *Schofield v. Ferrers*, 47 Id. 194.

3. If defendant acted in bad faith, the advice of counsel is no protection; citing *Glascock v. Bridges*, 15 La. Ann. 672; *Sharpe v. Johnston*, 59 Mo. 577, 76 Id. 660; *Fisher v. Forrester*, 33 Penn. St. 501; *Skidmore v. Bricker*, 77 Ill. 164; *McCarthy v. Kitchen*, 59 Ind. 500.

4. Malice may be inferred by the jury from all the facts and circumstances given in evidence, and expressions of ill feeling are circumstances proper to be submitted to the jury; citing *Thurston v. Wright*, 77 Mich. 96.

*Howard & Roos*, of counsel, for plaintiff, contended:

1. If a person has consulted counsel, who has advised prosecution, but nevertheless the client believes it will fail, and is actuated by angry feelings, he cannot excuse himself; citing *Sharpe v. Johnston*, 76 Mo. 660; and good faith is a necessary element; citing *Josselyn v. McAllister*, 22 Mich. 300, 305.

2. A discharge by the examining magistrate for want of probable cause makes a *prima facie* case for plaintiff upon that question; citing *Frost v. Holland*, 75 Me. 108; *Graves v. Dawson*, 133 Mass. 419; and is sufficient to require the defendant to produce his defense; citing *Casperson v. Sproule*, 39 Mo. 39, 44; *Sharpe v. Johnston*, 76 Id. 660, 670; *Stanton v. Hart*, 27 Mich. 539.

3. If a witness denies on his oath a promise which the statute of

81 MICH.—10.

frauds requires to be in writing, he does not commit perjury, because the promise by parol does not bind the party, and so the proof of it by parol has no tendency to establish any question in issue; citing 2 Bishop, Crim. Law, § 1038; *Rex v. Beneseeh*, Peake, Add. Cas. 93; *Plath v. Braunsdorff*, 40 Wis. 107.

CHAMPLIN, C. J. Huntington brought an action on the case against Gault for malicious prosecution, and recovered a verdict and judgment for $1,650.

The declaration avers, and so it was proved upon the trial, that Gault made complaint in writing before William W. Peck, the recorder of the city of Kalamazoo, as follows:

" STATE OF MICHIGAN, }
  " Kalamazoo county,   } *ss.*

" *In Recorder's Court for the City of Kalamazoo.*

" The complaint and examination on oath and in writing of Elias H. Gault, taken and made before me, William W. Peck, recorder and judge of the recorder's court for the city of Kalamazoo, in said county, upon April 9, 1888, who, being duly sworn, says that heretofore, to wit, on January 19, 1888, at the city of Kalamazoo, in the county aforesaid, in justice court, before Chas. F. Jannasch, a justice of the peace in and for the city of Kalamazoo aforesaid, a certain issue before then duly joined in said court between one Elias H. Gault and one Walter Huntington, in a plea of trespass on the case upon promises, wherein the said Elias H. Gault was plaintiff and the said Walter Huntington defendant, came on to be tried in the form of law, and was then and there tried, by a jury of the country in that behalf duly sworn and taken between the parties aforesaid, upon which said trial the said Walter Huntington then and there appeared as a witness for and on his own behalf, as defendant in the plea aforesaid, and was then and there duly sworn, and took the corporal oath, before the said Charles F. Jannasch, so being the said justice of the peace as aforesaid, that the evidence that he, the said Walter Huntington, was there given to the court and to the said jury so sworn aforesaid, touching the matter then in question between the said parties, should be the truth, the whole truth, and nothing but the truth, he, the said Charles F. Jannasch, as aforesaid, then and

there having sufficient and competent authority to administer said oath to said Walter Huntington in that behalf.

"And that, upon the trial of the said issue so joined between them, the said parties, as aforesaid, then and there became and was a material question whether the said Walter Huntington owed the said Elias H. Gault for a load of wood, and whether or not the said Walter Huntington has become security to the said Elias H. Gault for a load of wood, and whether or not he, the said Walter Huntington, had gone upon the farm of the said Elias H. Gault, and drawn away a load of wood, and whether or not he ever had had a load of wood in any form from the said Elias H. Gault. And the said Walter Huntington, being so sworn as aforesaid, contriving and intending to prevent the due course of law and justice, and to injuriously aggrieve the said Elias H. Gault, the plaintiff in said issue, then there, upon the trial of the said issue, upon his oath aforesaid, falsely, corruptly, knowingly, willfully, and maliciously did depose and swear, among other things, in substance and to the effect as follows:

"That he, the said Walter Huntington, had never had any wood of the said Elias H. Gault in any shape; and that he, the said Walter Huntington, had never bought any wood of the said Elias H. Gault aforesaid; and that he, the said Walter Huntington, did not owe the said Elisha H. Gault any sum of money for any load of wood; and that he, the said Walter Huntington, made no contract or obligation whereby he owed the said Elias H. Gault any sum of money for any load of wood at any time; and that he, the said Walter Huntington, had never had a load of wood from the premises of the said Elias H. Gault, either for himself or his hired man; and that he never went upon the farm and got a load of wood for his hired man, and that he never bought a stick of wood from the said Elias H. Gault in any shape.

" Whereas, in truth and in fact, the said Walter Huntington had lately before that gone upon the premises of the said Elias H. Gault, and drawn away a load of wood from the said premises, and had agreed to become security to the said Elias H. Gault, and had, by an understanding and agreement between him and the said Elias H. Gault, gone upon the premises, and taken a load of wood to his own farm, for the use, as he, the said Walter Hunting-

ton, said, of his hired man, and agreed there and promised the said Elias H. Gault that he would pay for the same, and since the drawing away of the said wood the said Walter Huntington had promised the said Elias H. Gault that he would pay the same; and the said wood was drawn away from the premises aforesaid, so sold by the said Gault to the said Walter Huntington, upon the promise of the said Walter Huntington that he would pay for the same, though for the use of his (the said Walter Huntington's) hired man.

"And so this complainant says that the said Walter Huntington, on January 19, 1888, at the city of Kalamazoo, in the county aforesaid, before the said Charles F. Jannasch, as aforesaid, the said Charles F. Jannasch, justice of the peace as aforesaid, then and there having such power and authority as aforesaid, by his own act and consent, and of his own most wicked and corrupt mind, in the manner and form aforesaid, falsely, wickedly, willfully, and corruptly did commit willful and corrupt perjury, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the people of the State of Michigan.

"Wherefore the said Elias H. Gault prays that the said Walter Huntington may be apprehended, and held to answer this complaint, and be further dealt with in relation to the same as law and justice may require.

"ELIAS H. GAULT.

"Taken, sworn, and subscribed to before me the day and year above written.

"WILLIAM W. PECK, Recorder."

That plaintiff was arrested upon a warrant issued upon such complaint, and taken before the recorder, who, after an examination, adjudged and determined that he was not guilty of said supposed offenses, and that there was no probable cause to believe him guilty thereof, and discharged him out of custody. The plaintiff avers that such prosecution was willful and malicious, and without any reasonable or probable cause whatever.

The defendant pleaded the general issue, and gave notice under it that he had good reason to believe, and still believed, that the charges were true as made, and

that Huntington willfully and corruptly swore falsely as claimed and charged of him, and that he (Gault) had good reason for instituting criminal proceedings thereon against Huntington, and that he did it from good motives and for justifiable ends, and that all he did in regard to what was set forth in plaintiff's declaration was done by and with legal authority, and counsel first being had, upon which he relied.

It appears from the record before us that Huntington and Gault owned farms a short distance from each other, and that Mr. Gault did not reside upon his farm, but employed a man by the name of Blanchard to work upon and care for it, and that Mr. Huntington also had hired a man by the name of Burrows, who lived upon his place. These parties had neighborhood dealings with each other, such as exchange of work and services rendered each other, and Huntington had some butter from the farm of Gault, and some articles he had purchased at an auction which Gault had at his farm; also a cow. It appears, further, that Mr. Huntington's hired man, Burrows, being in want of a load of dry wood, Mr. Huntington went with him to the farm of Mr. Gault, then in the charge of Mr. Blanchard, and Burrows asked Blanchard if he could get a load of dry wood. It is from this point in the conversation that Mr. Huntington's testimony differs from that of Messrs. Burrows and Staley, the two other parties present at that conversation. He testified as follows:

"As near as I can recollect it, Mr. Burrows wanted some dry wood. I went down there with him to Mr. Gault's one evening to see Mr. Blanchard. Mr. Blanchard was the man on the farm, and he asked Mr. Blanchard for some wood. He said they had it. When he got ready to go he said: 'I haven't the money to pay for this now, but I will pay for it soon.' Mr. Blanchard remarked that Mr. Gault didn't want to trust any more wood out.

I said, if Mr. Burrows didn't pay for the wood, I would."

He further testified that he went with Burrows the next day after the wood, and they drew it home. Mr. Gault testified as follows:

"I met Mr. Huntington one day up there near Mr. Green's, and he says: 'Mr. Gault, have you got any wood to sell?' I says: 'Yes.' He says: 'I have got to get a cord of wood for my hired man.' I says: 'All right; you go down to the farm. I presume the men will be there, and you can get it from them; if they are not there, you can get it anyway,—get a cord.' He says: 'All right.' I saw him a few days afterwards, and he says: 'Mr. Gault, I went down and got a cord of wood for my hired man, and I will settle with you for it.' I says: 'That is all right.'"

Mr. Burrows testified that in March, 1886, he was on Mr. Huntington's place, and stayed there until some time in June.

"When I went there I had a talk about getting some wood. I went with Mr. Huntington over to Mr. Blanchard, on Gault's place, to get the wood. We found Mr. Blanchard and Staley there. The talk that day was in Huntington's presence. We asked if they had any dry wood for sale. Then I said I would like to get a cord. Huntington was there. They got up, and went out doors, and I started after them. I spoke to Mr. Blanchard, and asked him if he would let me have the wood, and wait a few days. He said: 'I have had orders from Mr. Gault not to let any wood go without the money.' Mr. Huntington said: 'Let him have the wood, and I will settle with Mr. Gault for it.' This was in the evening. We got it the next morning. Mr. Huntington went with me after it. We brought it home to our place."

Witness further testified that he settled up with Mr. Huntington some time in June, 1886; that the wood was charged to him, and he paid Huntington for it. On cross-examination, he was asked:

" *Q.* Wasn't it this, that Mr. Huntington said that if Mr. Blanchard would let you have the wood he would see it was paid for?"

"*A.* Yes, sir."

On redirect examination he was asked:

"State what Blanchard said to Huntington about trusting him for the wood."

He replied:

"That is all right; if he would settle for it, I could have the wood. That is the way I came to get it."

Staley testified that he heard the conversation between Huntington, Burrows, and Blanchard. That—

"Huntington said to Blanchard he wanted to know if he had any wood to sell. Blanchard said: 'We have.' Huntington said: 'My man wants to get a load of wood.' Burrows said to Blanchard: 'I have not got the money to pay for the wood.' Blanchard said: 'Gault has strictly forbid my letting any off the place unless we get the cash.' Huntington says: 'If you will let him have the wood I will see it is paid for.' Mr. Blanchard said: 'All right; if you will see it is paid for, I will let him have the wood.' Huntington and Burrows came the next morning and got the wood."

Mr. Blanchard was not sworn upon the trial. Time passed on, and a misunderstanding arose between Mr. Gault and Mr. Huntington, until finally in January, 1888, Gault sued Huntington before a justice of the peace by the name of Jannasch, in an action of *assumpsit*, to recover the value of this wood, among other items of small amounts. He put in his bill of particulars, which included the item for this wood. In this trial one of the issues was whether Mr. Huntington was liable to Mr. Gault for this load of wood. The trial resulted in a judgment in Mr. Gault's favor for $9.51 damages, and Huntington appealed the case to the circuit court for the county of Kalamazoo, where the cause was again tried, in the month of May, 1888, upon the same issues tried

in the justice's court, and Gault again got a judgment for $10.40 damages.

At the trial before the justice Huntington was sworn, as a witness in his own behalf, and it was claimed by defendant, Gault, that he there testified that he had never had any wood of Gault either for himself or his hired men, and that in this he testified falsely and perjuriously; and Mr. Gault laid the matter before the prosecuting attorney of Kalamazoo county, and stated to him the facts and circumstances of the case.

Mr. Knappen, the prosecuting attorney, was sworn as a witness, and his testimony discloses that Mr. Gault came to see him, and told him about the suit between himself and Huntington, and claimed that Huntington had sworn to something that was not true, and said he wanted to lay the matter before him to prosecute, if there was a case; that he said that on the trial of that case they had a sort of open account, one against the other, and that Mr. Huntington had testified in that case that he had not had any wood of him in any shape, neither for himself nor hired man; that he told Gault that it was a pretty small matter to have anybody arrested on, unless it was a clear case; that Gault said it was just as bad for a man to commit perjury on a case of that importance as it was in a case of larger importance; that he told Gault he would talk with the witnesses; that he should bring in the justice and jury before whom the cause was tried, and if they had a case he would go ahead with it; that Gault said:

"That is what I want to do. I want you to look into it yourself, and, if it satisfies yourself that we have got a case, I want you to go on with it."

Mr. Gault invited the witnesses to go to the prosecuting attorney's office, and the justice and four out of six of the jurors who tried the case did go to his office, and he

investigated the matter. He then sent for Mr. Huntington, and told him of the charge, and asked him to give his statement, and also bring any witnesses he had, and he brought a witness by the name of Shaw; and he also stated that Huntington testified that he hadn't had any wood of Mr. Gault in any shape. He also sent for Burrows, who was Huntington's hired man, and also Mr. Blanchard and Mr. Staley, and made a full investigation before he made the complaint, and made up his mind to make the complaint, which he drew up himself, and from the information he obtained from the witnesses he drew up the formal complaint, and directed the recorder to issue a warrant. The complaint was sworn to by Mr. Gault.

There is no contention that the prosecuting attorney did not act in good faith. If there ever could be a case where the advice of counsel would be a defense to an action for malicious prosecution, I think this is one. It is claimed that it is taken out of this rule by three facts or circumstances:

1. That it was instituted by Gault for the purpose of collecting a debt.

2. That after the suit had been appealed, and before the complaint was made, he once offered to settle all matters of difference—everything—for $50, which was not accepted, and afterwards refused to settle for less than $100.

3. That he did not tell the prosecuting attorney that the wood in question had been paid for, or that it had been taken into account in a settlement between him and Huntington.

The claim that the prosecution was instituted for the purpose of collecting a debt is without foundation in fact or in the testimony. Huntington owed him the judgment recovered before the justice. Gault knew that Huntington was good. Besides, the suit had been

appealed, and, of course, an appeal-bond necessarily had been given.

The testimony shows that it was Huntington's friends that approached Gault for a settlement of the matters of difference between them in each instance, and what was said about a settlement had no bearing whatever upon the crime charged in the complaint. That was either true or false before these efforts were made by the friends of the parties to settle, and the fact that Gault fixed a price for which he would settle, great or small, could have no legitimate tendency to prove or disprove the charge embraced in the complaint. It might be admissible to show malice, but the malice of the party who fully and fairly states the facts bearing upon the charge made to the prosecuting officer does not take away the defense of advice of counsel. That malice entered into the mind of the prosecutor, or influenced him in the least in his investigations, or in advising the prosecution, cannot be seriously claimed. He was investigating crime, not motives of the complaining witness.

The third fact which plaintiff's counsel insist Gault did not disclose to the prosecuting attorney it seems to me cannot be with sincerity urged. It is based upon the testimony of Huntington, given upon this trial, that he had a settlement with Gault either just before or a short time after the auction which Gault had at his farm in March, 1886, and that this wood item was then adjusted. He does not fix the dates definitely. But the wood was not purchased until some time in March, and whether before or after the auction does not appear. It is sufficient, to show that this pretense of settling for the wood is an afterthought, to call attention to the claim made by Huntington,—

1. That he never had any wood from Gault, either for himself or for his hired man, in any shape.

2. That his promise to pay for the wood was that he would pay for it if his hired man did not, and was void under the statute of frauds.

The trial and judgment in justice's and circuit courts effectually dispose of the claim.

The judge erred in his charge to the jury respecting the effect which the statute of frauds would have upon the question whether Huntington committed perjury. That statute was entirely foreign to this case. Were it otherwise, Huntington's own testimony shows that his undertaking was an original promise, and that the credit was given to him. He must have so understood it himself, for in June following, and before any demand was made, and none was ever made, upon his hired man for payment, he charged up the price to him, and received his pay therefor. This he does not deny.

When the facts are undisputed, want of probable cause is purely a question of law. In this case the facts are undisputed that Gault did place all the facts before the prosecuting attorney, not only by himself, but by disinterested witnesses, and acted upon his opinion. The testimony of Gault and of the prosecuting attorney upon this point is not contradicted, and the question became one, as before said, of law, and the circuit judge should have instructed the jury that the plaintiff had failed to show that there was a want of probable cause to make the complaint. The defense that the prosecution was instituted by advice of counsel was as conclusively established as was the fact that the prosecution was instituted by defendant, or that the prosecution had terminated, and called for like instructions to the jury.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.