### SCHNEIDER *v.* SHEPHERD.

1. FALSE IMPRISONMENT—PROBABLE CAUSE—DIRECTED VERDICT.

In raiding a number of houses of prostitution, the prosecutor of Wayne county ordered plaintiff's home to be entered and the inmates placed under arrest. The prosecuting attorney had no knowledge of any crime committed by plaintiff or information that he was chargeable with keeping a disorderly house, but relied upon the report of an investigator employed by the department, which did not contain the name of the owner but described the house by number. Officers entered the house and took plaintiff into custody, and they entered the room of plaintiff's wife and daughter, who were allowed to remain at home. Discovering or learning of the probable mistake, defendant released plaintiff before he was brought to jail. *Held*, that the question of want of probable cause was one of law, and that the trial court should not have submitted the issue to the jury; that the error was immaterial on defendant's appeal from a verdict against him, and that no probable cause for arresting plaintiff was established by the evidence.

2. SAME—WANT OF CAUSE—DISORDERLY HOUSE.

Evidence that the defendant at no time had any information in his possession or was notified that plaintiff had been connected with the commission of the crime in question, and the only knowledge he had was the report of

the investigator who gave merely the number of the place, not the name of its proprietor, did not justify taking plaintiff into custody without a warrant.

Error to Wayne; Murphy, J. Submitted April 6, 1916. (Docket No. 28.) Decided June 1, 1916.

Case by John H. Schneider against Hugh Shepherd, John Gillespie, and Frank A. Heig for illegal arrest. Verdict directed by the court in favor of defendants Gillespie and Heig. Judgment against defendant Shepherd who brings error. Affirmed.

*Robert M. Toms,* for appellant.

*Cullen, Casgrain & Wurzer,* for appellee.

KUHN, J. The plaintiff has recovered a judgment against the defendant because of an illegal arrest claimed to have been instigated by the appellant. It appears that in March, 1914, the plaintiff resided with his wife and 12-year-old daughter at 291 Brush street, in the city of Detroit, and that he had occupied this place as owner in fee for over 30 years. The defendant Shepherd was at that time the prosecuting attorney of Wayne county, and defendants Gillespie and Heig were, respectively, commissioner and detective sergeant of the Detroit police department. It was the claim of the defendant Shepherd that previous to March 6, 1914, he had received many complaints from citizens that, in spite of an order of the police department of the previous October that all houses of prostitution be closed in the city, many disorderly houses were still operating. He thereupon, without any knowledge or aid of the police department, secured from Chicago two private investigators, who had been recommended to him by the chairman of the committee of 50 of that city as experienced and reliable men. They were kept at work for about six weeks, and

at the end of each day turned over to the defendant Shepherd written reports of their investigations. There were four reports, two of date of February 12, 1914, and the other two of date March 2, 1914, which referred to 291 Brush street but did not give the name of the owner. The character and tenor of these reports may be obtained from the first one, which was as follows:

"Report of Investigator No. 1 for Thursday, the 12th day of February, A. D. 1914.

"Place: 291 Brush St., H. I. F. Owner of record —Alma, inmate.

"*Gentlemen:* I submit the following report for the day and place as above. At about 4:00 o'clock p. m. I visited this place with Investigator No. 2, and found one girl in here at this time. She solicited the both of us for immoral purposes. Prices here, $3.00 and $1.00 for the room. $2.00 and $1.00 for the room for a short while. Keeper was in a room entertaining a man.

"Respectfully submitted,
"WM. J. CARRIGNAN, Investigator."

At about 10 o'clock on the night of March 5th, the defendant Shepherd called on the defendant Gillespie at his office, and told him of the work of the investigators and of the results obtained, and asked the defendant Gillespie to have 100 police officers assembled at the police headquarters at about midnight, for the purpose of raiding the disorderly houses concerning which he had been furnished information by the investigators. But Shepherd did not show Gillespie at this time his written reports, nor did he give him the addresses of the different houses he desired to have raided. At about 11:30 o'clock on the same night, Shepherd returned to the police headquarters, and at the request of the defendant Gillespie Exhibit 1 was drawn up and signed by Shepherd, which is as follows:

"DETROIT, MICH., March 5, 1914, 11:25 p. m.
"JOHN GILLESPIE, Police Commissioner,
    "City of Detroit, Mich.
    "*Dear Sir:* Inclosed find fifty (50) addresses of houses or buildings which I desire raided and all persons found therein brought to police headquarters, registered, and immediately forwarded to the prosecuting attorney's office in the county building. Also bring all liquors, beer, etc., found in these places to police headquarters.

"I believe that this office has sufficient evidence to bring these people in and would order you to use all force necessary to gain admittance to these places. I would ask you to instruct your men on entering these houses to immediately put the telephones out of commission.

"It will be necessary to secure the services of at least 100 police officers to do this work at as near one time as possible. You will, therefore, have these men available at the central police station on March 6, at 12:30 a. m.

"Sincerely yours,
        "HUGH SHEPHERD, Prosecuting Attorney."

At the same time, slips of instructions were prepared and given to the officers who were there assembled, and they were then sent out in squads to execute the orders given them. Among them was the following order:

"291 Brush Street, 2nd floor.
    "*First.* Cut all telephone wires.
    "*Second.* Bring all persons present to the prosecutor's office."

This slip was given to a squad comprising the defendant Heig and two uniformed police officers, and bore the plaintiff's address, and they thereupon proceeded to his home. Upon arriving there, the officers aroused the inmates by calling and knocking at the door, and were admitted by the plaintiff. The defendant Heig told the plaintiff that he had orders to take all the persons in the house to police headquarters, and directed him to be prepared to leave at once. The

plaintiff informed the officers of his name and business, and objected to leaving his home. Among those who were admitted to the house was a newspaper reporter, who accompanied the officers. He telephoned Shepherd, and suggested that a mistake had been made. Shepherd thereupon telephoned to the defendant Gillespie to recall at once the officers sent to 291 Brush street. In the meantime the officers went through the house, going into the room where the plaintiff's wife and child were. The plaintiff dressed himself, prepared to leave the house with the officers, and did so, leaving his wife and child in the house. When they had proceeded about 10 or 15 feet from the front of the house, an officer who had been dispatched to the scene by the commissioner arrived in a police automobile and ordered the plaintiff released.

On the trial of the case, at the conclusion of the proofs by the plaintiff, the trial court, upon motion, directed a verdict in favor of the defendants Gillespie and Heig, on the ground that "they had a right to rely on the information imparted to them by the prosecutor acting in a *quasi* judicial capacity," and that "it must be said they acted upon probable cause." Counsel for the defendant Shepherd then moved the court to direct a verdict in his favor on the grounds:

(1) That, the facts being undisputed, as a matter of law he had probable cause to believe that a felony had been committed on the plaintiff's premises; and
(2) That his acts had been within the scope of his authority as a *quasi* judicial officer.

This motion was later renewed and denied, and exception taken, and this action of the court is made the basis of appellant's first assignment of error. A verdict of $500 against the defendant was had, and thereupon a motion for a new trial was made, the refusal of which is also made the basis of an assignment of error.

The learned trial judge submitted to the jury the question whether or not there was probable cause for making the arrest of the plaintiff and prosecuting the search of his house.   It is urged by counsel for the appellant, that the facts here in question being without dispute, a question of law was presented for the court to decide, and that it should not have been submitted to the jury, and we are of the opinion that this contention of counsel is sound; for what facts and circumstances amount to probable cause is a pure question of law.   A careful examination of the record discloses that all the essential facts involved here are undisputed, and under the well-settled rule of law the question of a want of probable cause thereupon became a question of law, to be determined by the court upon a consideration of the facts involved in the particular case.   This question has recently had the consideration of this court in the case of *Gilecki* v. *Dolemba,* 189 Mich. 107 (155 N. W. 437), in which previous decisions of the court are cited.   *Huntington* v. *Gault,* 81 Mich. 144 (45 N. W. 970) ; *Perry* v. *Sulier,* 92 Mich. 72 (52 N. W. 801) ; *White* v. *McQueen,* 96 Mich. 249 (55 N. W. 843) ; *Filer* v. *Smith,* 96 Mich. 347 (55 N. W. 999, 35 Am. St. Rep. 603) ; *People* v. *Kilvington,* 104 Cal. 86 (37 Pac. 799, 43 Am. St. Rep. 73) ; *Burk* v. *Howley,* 179 Pa. 539 (36 Atl. 327, 67 Am. St. Rep. 607) ; *Diers* v. *Mallon,* 46 Neb. 121 (64 N. W. 722, 50 Am. St. Rep. 598).   However, in view of the conclusion we have reached with reference to the question whether or not the defendant Shepherd had probable cause to instigate the arrest of the plaintiff, we do not think that this error on the part of the court was prejudicial to the rights of the appellant.

It is true that a prosecuting officer, in acting within the line of his public duty, has been held to be a *quasi* judicial officer.   *Meister* v. *People,* 31 Mich. 99; *Sneed* v. *People,* 38 Mich. 248; *People* v. *Bemis,* 51 Mich. 422

(16 N. W. 794). But we are of the opinion that in this case the prosecutor, in doing what he did in instigating the arrest of the plaintiff, was not entitled to the immunity of a *quasi* judicial officer. The learned trial judge, in denying a motion for a new trial, very aptly and correctly said the following with reference thereto:

"The prosecuting attorney is a constitutional officer. The Constitution, however, leaves the duties and powers of the office to be prescribed by the legislature. Constitution of 1909, art. 8, § 3. So far as here germane, these powers and duties have been defined as follows:

" 'The prosecuting attorneys shall, in their respective counties, appear for the State or county, and prosecute or defend in all the courts of the county, all prosecutions, suits, applications and motions, whether civil or criminal, in which the State or county may be a party, or interested.' Section 1152, 1 How. Stat. (2d Ed.); 1 Comp. Laws 1915, § 2405.

"Nothing in this provision can by any construction be made to comprehend the acts involved in this controversy. The investigation of alleged crimes by the prosecuting attorney, through private individuals, the acceptance of their reports as basic information upon which is issued a peremptory order to the police to arrest, without warrant, the suspected criminals, finds no statutory sanction in the prescribed powers and duties of a prosecuting attorney. If he proceed upon such a course of action, he does so at the same peril as does the unofficial citizen. His office is not a cloak to protect him from liability for a wrong thereby resulting to an innocent person subjected to a false arrest. The statute affords no such robe of immunity, for it neither delegates any such duty nor grants any such power."

The principles of law applicable to the situation were, in my judgment, correctly given in the charge to the jury. We see no escape from the conclusion that the prosecuting officer, under the facts in this case, placed himself in no different situation than that of any private informer, and the question therefore

resolves itself into a query whether or not the facts which he had before him were sufficient to warrant an ordinarily cautious person in believing that the person who was arrested was guilty of the offense charged.

Before there can be probable cause which would warrant the arrest of a person, there must be at least some information connecting that person with the commission of the alleged offense. It conclusively appears that the defendant Shepherd at no time had any information in his possession, nor was he informed, that the plaintiff was in any way connected with or suspected of the commission of the crime for which the arrest was made. The only information that he had before him was the reports of the investigators, two made on February 12th and the others on March 2d, in which the investigators reported they had visited a place at 291 Brush street and concluded from what they saw that the house was used for immoral purposes. But the owner of the place was not specified in either report. It is conceded that these reports were unreliable, because it appears without question that 291 Brush street had been the home of Mr. Schneider for more than 30 years. The defendant Shepherd testified that he had no evidence against Schneider, and he relied entirely on the reports of the investigators. The office of prosecuting attorney is one of the most important which the people are called upon to fill, and the person selected becomes by virtue of his duties the legal adviser of the law enforcing officers of the county. Unquestionably the defendant was actuated by the best motives in attempting by the methods he adopted to secure a better enforcement of the law than had theretofore obtained. Nevertheless, because of his very position, responsibility rested upon his shoulders to see that the safety of the ordinary citizen from illegal arrest be secured. The reports he

received indicated to him the location of the house which it was alleged was being used for illegal purposes. He had from February 12th to March 5th to make inquiries as to who the proprietor of the house in question was. He saw fit to make no further inquiry, and to obtain no legal process.

The right of the citizen to freedom from illegal arrest, and the immunity of his home from unlawful search, should not hang upon as slender a thread as is made out by the defendant's effort to show probable cause. We are of the opinion that the facts in this case conclusively show, as a matter of law, that there was a want of probable cause on the part of the defendant Shepherd in instigating the arrest of the plaintiff, and therefore there was no reversible error on the part of the trial judge in submitting this case to the jury.

The judgment of the court below must therefore be affirmed.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.