WEIDEN *v.* WEIDEN.

1. MALICIOUS PROSECUTION—FACTS TO BE SHOWN TO MAINTAIN AC-
TION.
   To maintain an action for malicious prosecution, there must be
   established: (1) The fact of the alleged prosecution and that
   it has come to a legal termination in plaintiff's favor; (2) that
   defendant had no probable cause; (3) that defendant acted
   from malicious motives.

2. SAME—MALICE MAY BE INFERRED—WANT OF PROBABLE CAUSE.
   While malice may be inferred from want of probable cause, want
   of probable cause may not be inferred from malice, in an ac-
   tion for malicious prosecution.

3. SAME—PROBABLE CAUSE—MUST ACT AS A REASONABLY PRUDENT
MAN WOULD ACT.
   If the facts proven establish probable cause, it is not necessary
   to defendant's protection that he was familiar with all of them
   when he made the complaint, but if he acts as a reasonably
   prudent man should act under the circumstances, he is not to
   be cast in damages for malicious prosecution even though the
   accused be innocent.

4. SAME—WHEN JUSTIFIED IN MAKING COMPLAINT.
   Facts which would justify a reasonably prudent man in asking
   that a jury pass upon accused's guilt would justify defendant
   in making the complaint.

5. SAME—WHEN PROBABLE CAUSE ESTABLISHED.
   In an action for malicious prosecution, proof that defendant in
   good faith fully and fairly stated all of the material facts
   within his knowledge to the prosecuting officer and acted upon
   his advice establishes a case of probable cause.

6. SAME—FULL DISCLOSURE TO PROSECUTOR—DIRECTED VERDICT.
   Where, in an action for malicious prosecution, it clearly appears
   that defendant made full disclosure to the prosecutor and acted
   upon his advice in making the complaint, a verdict in favor of
   defendant was properly directed, although the accused was
   acquitted of the offense charged.

---

As to when malice may be inferred in action for malicious prose-
cution, see annotation in 9 L. R. A. (N. S.) 1087; L. R. A. 1915D, 3.

On effect of institution of prosecution on false information with-
out investigation as showing lack of probable cause in action for
malicious prosecution, see annotation in 5 A. L. R. 1688.

Error to superior court of Grand Rapids; Verdier (Leonard D.), J. Submitted January 10, 1929. (Docket No. 64, Calendar No. 34,146.) Decided March 29, 1929.

Case by John G. S. P. Weiden against Joseph H. Weiden, Sr., for malicious prosecution. Judgment for defendant. Plaintiff brings error. Affirmed.

*Fred P. Geib (Henry C. Hart,* of counsel), for plaintiff.

*Shelby B. Schurtz,* for defendant.

Plaintiff is the adopted son of Stephen J. Weiden, who was a brother of defendant. On the night of November 28, 1923, Stephen J. was found in the basement of his store building, unconscious, with numerous wounds from which blood was and had been escaping. He was taken to a hospital where he arrived about 11 o'clock. He died December 1st without regaining consciousness. The doctor who first examined him at the hospital found so many lacerations, contusions, and fractures as to remove from the field of probability injury by falling down stairs, although not removing it from the field of possibilities. He testifies:

"It's rather unusual to think of anyone falling down steps like that and receiving this multiple of injuries.    *    *    *

"A fracture of the skull there must be some trauma, injury to the skull to cause such an injury, it must be a multiple of injuries, blows, to cause such a multiple of lacerations to the skull to cover such an area, and then the arms, ribs and legs, bruises on the legs.

"*Q.* A man falling off the steps to the cement floor, could one sustain such injuries as you have

described, bruises and scratches, would it be possible?

"*A.* He might receive some, but such a multiple of injuries would be unusual; I hardly think it would bring on such a severe type of injuries."

From the first defendant was satisfied that his brother had been murdered, and murdered by plaintiff. He employed detectives, private counsel, and for many months and in many ways sought to obtain a trial of the question, but without success. His efforts were uniformly rebuffed by the public officials. Finally, on the 14th day of July, 1925, he filed a petition in the Kent circuit court for an investigation under Act No. 196, Pub. Acts 1917. An investigation was conducted, at first by Judge Brown and Judge Dunham jointly, occasionally consulting with Judge Perkins, and, during the illness of Judge Dunham, by Judge Brown alone. It is said that the investigation was not in conformity with the statute. Many witnesses were called and examined, their testimony being taken and transcribed. The prosecuting attorney did not attend. He had taken office the first of the year, and had apparently followed his predecessor's policy in the case. The sessions were not continuous; from time to time witnesses were brought in by defendant, by a detective in his employ, and probably at the suggestion of one or the other of the judges. The investigation was pending several months, and much testimony was taken. When the testimony was completed, the judges sent for the prosecuting attorney. They were thoroughly convinced that a prosecution should be instituted, and were apparently put out by the nonaction of the officials. They gave the prosecuting attorney the transcript, and told him, in substance, that unless he acted they would appoint

a special prosecutor, who would act. We quote the prosecutor's testimony as to what followed:

"After the meeting with the judges I took the testimony that they had taken, which is here; later on the digest as made by my assistant, Mr. Rodgers, I conducted a separate examination of my own, as I recollect, some of the witnesses who had already testified before the circuit judges, and others whose names do not appear upon the record. This digest was given me on the 26th day of December, 1925, and it took approximately four weeks after that in conducting this investigation to investigate the matter further, until I finally came to the conclusion that there was probable cause and a warrant should issue. I drew a warrant charging Jack Weiden with first degree murder, and called Joe Weiden to sign it, called him up to my office in the courthouse on or about the 25th day of January, 1926. He refused to sign it. Knowing that Judge Brown was one of the judges who had conducted the examination with one of the other judges or two judges, I immediately went down to Judge Brown's courtroom in company with Joe Weiden, and I think it is true just as Judge Brown has already testified, that he was on the bench at that time. * * *

"When we got into Judge Brown's office, Judge Brown came in and saw Mr. Joe Weiden and myself, and we had a conference there. I think Judge Brown said to Mr. Weiden, 'What is the reason you don't want to sign this warrant?' He said, 'I would prefer to have either Mr. Munshaw or some of the other public authorities or officials sign the warrant.' Judge Brown said, 'We have looked the matter over carefully, Mr. Munshaw has just said that in his opinion there is probable cause to issue the warrant. Now, it is up to you to sign it so we can put this matter in operation.' After talking there a few minutes Mr. Weiden came to my office and signed it, I mean the complaint, or signed it in

Judge Brown's office, I don't know which, and the warrant was then issued.''

This is not at all disputed, and is corroborated by the following testimony of Judge Brown:

''I said, 'The prosecutor has the complaint ready and the warrant ready, and you refuse to sign it?' and now after that, as near as I can tell, he wanted some official to sign it, and I think it was kind of said between him and Munshaw as to whether Mr. Munshaw should sign it, he wanted the prosecutor to sign it, or the coroner, I have forgotten which it was. He said they are the officials of the county, they can sign it. I said, 'The prosecutor has got this complaint ready for you,' and I said, 'It is your duty to sign it, and as a citizen and as a member of the family you have got to sign it. He has got all he can do to prosecute, he has drawn up the warrant and complaint.' Munshaw said, 'Yes, it is all ready and now he refuses to sign it.' I said, 'You don't take any responsibility, you are not responsible because the prosecutor is prosecuting this case on his own judgment,' that is what I said. He said, 'Well, if you say so I will sign it.' ''

An exhaustive examination was held before the magistrate, who found there was probable cause, and held plaintiff for trial in the superior court of Grand Rapids on the charge of murder. There the information was quashed and the plaintiff discharged on the ground that the evidence before the magistrate did not establish the murder or that there was probable cause to believe plaintiff guilty. In *People* v. *Weiden,* 239 Mich. 169, we reviewed that judgment and reversed it, holding, as did the examining magistrate, that there was probable cause. Some of the outstanding facts disclosed by the testimony were there noted. There was a trial

on the merits, resulting in an acquittal, and this suit for malicious prosecution was instituted. It resulted in a directed verdict for defendant, upon which judgment was entered. The printed record in *People* v. *Weiden, supra,* was by stipulation of counsel and the consent of this court made a part of this record, as was the unprinted transcript of the testimony taken before the circuit judges. All have been examined with care, resulting in the conclusion that there is but one question for us to decide, *i. e.,* did plaintiff establish a want of probable cause?

FELLOWS, J. (*after stating the facts*). In actions for malicious prosecution three propositions must be established: (1) The fact of the alleged prosecution and that it has come to a legal termination in plaintiff's favor; (2) that the defendant had no probable cause; (3) that he acted from malicious motives. *Thomas* v. *Bush,* 200 Mich. 224. It is a recognized rule that malice may be inferred from want of probable cause, but this is not a rule that works both ways. Want of probable cause may not be inferred from malice. In *Hamilton* v. *Smith,* 39 Mich. 222, it was said:

"And if it appear that the defendant had probable cause the action must fail, no matter how wicked or flagitious may have been the real motive. The circumstances having been such as would have justified a man of rectitude in moving in obedience to his duty as a citizen, the law will not inquire whether he who did move was governed by base motives or not. The act in itself being proper, the bad purpose in the mind is left to the penalties of the moral law."

We are satisfied that, in the instant case, not only has the plaintiff signally failed to establish a want

of probable cause, but that the testimony affirmatively establishes probable cause. We reach this conclusion for two basic reasons:

1. That probable cause is affirmatively established as matter of law by the testimony taken before the examining magistrate and which was before us in *People* v. *Weiden, supra,* and which by agreement of counsel is made a part of the bill of exceptions in the instant case. We so held when that case was before us, and while it is not *res adjudicata* of the rights of the parties, we so hold now. If the facts proven establish probable cause, it is not necessary to defendant's protection that he was familiar with all of them when he made the complaint. 18 R. C. L. p. 37. If he acts as a reasonably prudent man should act under the circumstances, he is not to be cast in damages for malicious prosecution even though the accused be innocent. Again we quote from *Hamilton* v. *Smith, supra:*

"As lawful grounds may exist to justify a party in setting the criminal law in motion, although it turn out that no offense has been committed, or if committed, not by the accused, so it follows that what is probable cause is not contingent upon the fact of the guilt of the accused. This is evident. The law itself ordains that prosecution shall be the method for solving the question whether one has committed crime or not, and as prosecution is therefore a necessary antecedent, the law would violate common sense and destroy itself if it were to say that the act of prosecuting must yet wait for knowledge of the guilt of the suspected party.

"In case the information possessed is believed and is such and from such sources that the generality of business men of ordinary 'care, prudence and discretion' would prosecute upon it under the same conditions, there is probable cause (citing cases)."

The testimony of the doctor to which we have referred, clearly tending to establish murder by some one, the presence of defendant in the alley about the time the crime was claimed to have been committed, the evidence negativing the theory of robbery as a motive, the financial gain which would come to plaintiff by his adoptive father's death, the fact that his wife was rattling at the door of the store and trying to get her husband out of the store, the testimony of the Hunt girl that plaintiff, when in his cups, said: "There was two Steve Weidens; one Steve Weiden killed the other Steve Weiden, and there's only one left;" these facts, without going further, would justify a reasonably prudent man in asking that a jury pass upon plaintiff's guilt. We held they justified holding plaintiff for trial in *People* v. *Weiden, supra,* and we hold they justified defendant in making the complaint.

2. Defendant submitted the testimony to the circuit judges, and they in turn submitted it to the prosecuting attorney, who spent four weeks in an independent investigation, at the end of which time both he and Judge Brown directed defendant to sign the complaint. The rule is thus stated in *Smith* v. *Tolan,* 158 Mich. 89:

"It is the settled law in this State in actions of malicious prosecution and false imprisonment that, where a prosecuting witness has in good faith fully and fairly stated all of the material facts within his knowledge to the prosecuting officer and acted upon his advice, proof of the fact establishes a case of probable cause."

See, also, *Huntington* v. *Gault,* 81 Mich. 144; *Thomas* v. *Bush, supra; Pawlowski* v. *Jenks,* 115 Mich. 275; *Wakely* v. *Johnson,* 115 Mich. 285; *Rogers* v. *Olds,* 117 Mich. 368; *Doty* v. *Hurd,* 124

Mich. 671; *Christy* v. *Rice,* 152 Mich. 563.   In the last cited case, it was said:

"The question is, What had the defendant the right to assume at the time he called upon the prosecutor the second time and was directed by him to make oath to this complaint?   The prosecutor had declared to him that he would act upon his own judgment and own investigation, and he then assured him that he had satisfied himself by an investigation that there was probable cause for instituting this prosecution.   It must be assumed that defendant, in swearing to this affidavit, if he himself believed the truth of the statements, was acting under the direction of the prosecutor, and had the right to assume that the prosecutor was instituting the suit on behalf of the public."

Manifestly, the accuser must honestly and fairly disclose to the prosecutor the facts and all the facts within his knowledge.   There is no room in the instant case for claiming he did not.   The transcript of the testimony submitted to the judges and by them to the prosecuting attorney, while not printed, is by stipulation made a part of the record and has been read by us.   It contains not only testimony tending to establish plaintiff's guilt, but it also contains the testimony of three of plaintiff's alibi witnesses.   Not only was there submitted to the judges and the prosecuting attorney testimony against plaintiff, but also testimony tending to establish his innocence.   Plaintiff failed to make a case entitling him to go to the jury.   Further comment is unnecessary.

The judgment will be affirmed.

NORTH, C. J., and FEAD, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.