*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHARON ROSE ZLATKIN, and PEGGY
ZLATKIN,

        Plaintiffs-Counterdefendants-
        Appellants,

v

WILLIAM ROGGOW, MARILYN ROGGOW, and
JAMES AUGUSTINE,

        Defendants-Counterplaintiffs-
        Appellees,

JAMES MAVEAL,

        Defendant-Appellee.

UNPUBLISHED
March 19, 2020

No. 346247
Gladwin Circuit Court
LC No. 17-009273-NZ

Before: BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

PER CURIAM.

Plaintiffs appeal by right an order granting summary disposition in favor of defendant, Gladwin County Animal Control Officer James Maveal ("Maveal"), and an order of judgment following a jury trial in favor of the remaining defendants. We affirm.

## I. FACTS & PROCEDURAL HISTORY

Robert Frost wrote, "Good fences make good neighbors."[1] That proverb is apropos in this case arising out of a dispute between neighbors in a farming community in Gladwin County.

In 2015, plaintiffs, Sharon Zlatkin ("Sharon") and her mother Peggy Zlatkin ("Peggy"), bought a farm in Butman Township (the Zlatkin farm). In September 2015, they began residing at the farm with their horses, cattle, sheep, geese, and dogs. Defendants, William Roggow

---

[1] Robert Frost, *Mending Wall*, in North of Boston (1914).

-1-

("William") and his wife, Marilyn Roggow ("Marilyn"), reside on the property immediately west of the Zlatkin farm, and defendant James Augustine ("Augustine") resides on the property north, across the street from the Zlatkin farm. Plaintiffs claim that William, Marilyn, and Augustine tampered with the fence around the Zlatkin farm and let loose plaintiffs' animals so that Maveal would issue citations to plaintiffs, and that Maveal joined in the plot to harass and intimidate plaintiffs so that they would move away from the area. William, Marilyn, and Augustine claim that plaintiffs' habitually at-large animals constituted a nuisance.

In 2016, Maveal visited the farm on several occasions to investigate complaints of animal cruelty and animals running at large, and issued a number of verbal warnings to Sharon. In 2017, complaints about plaintiffs' horses and cattle running unrestricted escalated and Maveal began issuing civil citations to Sharon under Gladwin County Ordinance 2013-001 § 6.[2] Sharon appeared in court for the citations, pleaded "responsible," and paid a fine. Sharon was issued additional civil citations when animals continued to escape from the Zlatkin farm.

Eventually, Sharon retained counsel and moved to dismiss the civil citations claiming that they went beyond the legal authority granted by the county ordinance which applied only to dogs running at large, not to any other animal. Subsequently, Gladwin County prosecutor Aaron Miller dismissed *nolle prosequi* the civil citations and the fine that Sharon paid was refunded to her. Thereafter, Maveal issued criminal citations under MCL 433.12(2)[3] when the complaints persisted.

During this same time period, plaintiffs complained several times to the Gladwin County Sheriff's Department that William and Augustine were tampering with the fence and letting the animals loose so that Maveal would issue additional citations. Plaintiffs believed that Maveal was part of a larger, neighborhood-wide conspiracy to harass and intimidate plaintiffs so that they would move away from the area.

On November 3, 2017, Peggy filed a complaint with the Gladwin County Sheriff's Department alleging that William and Augustine committed malicious destruction of property by tampering with the electric fence and causing it to short out. That same day, plaintiffs initiated this lawsuit alleging that the defendants engaged in malicious prosecution through the issuance of the civil and criminal citations, stalking, and malicious destruction of property. William, Marilyn,

---

[2] The ordinance is titled "Animals at Large" and states:

> No Person who owns, possesses or harbors a dog shall allow such dog to run without restraint. This provision shall not be considered to apply to dogs engaged in lawful hunting activities which are under the direct supervision of the owner and which are trained in the sport of hunting, nor to cats. [Gladwin County Ordinance 2013-001 § 6.]

A violation of the ordinance is a civil infraction. (Gladwin County Ordinance 2013-001 § 14.)

[3] "The owner of an animal shall not permit or enable his animal to run at large in this state." MCL 433.12(2). "Animal" is defined as "cattle, horses, sheep, swine, mules, burros, or goats." MCL 433.11(a). Violation of MCL 433.12 is a misdemeanor offense. MCL 433.12(4).

and Augustine filed a counterclaim alleging that plaintiffs' habitually at-large animals constituted a nuisance. In the meantime, Miller dismissed *nolle prosequi* the criminal citations.

Maveal moved for summary disposition pursuant to MCR 2.116(C)(7) (governmental immunity), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact). Maveal argued that plaintiffs were required to plead a "special injury" as a result of the civil proceedings at issue in their claim of malicious prosecution, and the alleged injuries were insufficient to meet that requirement. Maveal further argued that based on William's complaints, he had probable cause to issue all the citations, and that his mistakenly issuing the civil citations under the county ordinance did not undermine the fact that he had probable cause to issue the criminal citations under the state statute. He argued that as long has he had probable cause to issue criminal citations under the state statute, his mistake of law was of no consequence. Moreover, Maveal argued, the unrebutted evidence demonstrated that he issued the civil citations under the ordinance rather than under the state statute because he believed that doing so would result in a lesser fine for plaintiffs, and therefore, plaintiffs failed to establish a genuine issue of material fact showing that he acted with malice.

In support of his motion, Maveal attached an affidavit by Miller stating that he dismissed the civil citations issued under the county ordinance because that ordinance only applied to dogs running at large. Miller further stated that his decision to dismiss the prosecutions on the criminal citations issued under the state statute was not due to a lack of probable cause, but because Sharon "had not been issued another ticket since September 2017 and [Miller] believed it was in the interest of justice and judicial economy to dismiss those cases."

Plaintiffs argued that, with regard to the civil citations, Maveal lacked probable cause as a matter of law. As to the criminal citations, plaintiffs argued that Maveal lacked probable cause because he issued them without verifying that William's complaints, upon which the citations were based, were legitimate, and because Maveal failed to consider certain exculpatory evidence, e.g., Sharon and Peggy's numerous calls to the sheriff's department about William and Augustine tampering with the fence and harming plaintiffs' animals. Plaintiffs further argued that malice could be inferred from the lack of probable cause and from Maveal's failure to inform Miller of that exculpatory evidence.

Plaintiffs moved to strike Miller's affidavit because his opinion regarding probable cause (1) was merely an opinion of a nonexpert witness, (2) was based solely on incomplete and biased information provided by Maveal, (3) was suspect because of Miller's friendly relationship with Maveal, and (3) a determination of whether probable cause existed is a fact question subject to a jury determination, and Miller's opinion would usurp the jury's role.

After hearing oral arguments, the trial court denied plaintiffs' motion to strike Miller's affidavit and granted Maveal's motion for summary disposition. The trial court concluded that summary disposition was appropriate under MCR 2.116(C)(8) with respect to the criminal citations issued under the state statute because plaintiffs failed to allege facts sufficient to show that Maveal acted with malice and lacked probable cause. The trial court further concluded that plaintiffs failed to create a genuine issue of material fact demonstrating that Maveal lacked probable cause to issue the criminal citations. Thus, the trial court ruled that summary disposition also was warranted under MCR 2.116(C)(10). With regard to the civil citations, the trial court

concluded that summary disposition was appropriate because plaintiffs failed to allege that they suffered a "special injury."

The case proceeded to trial on plaintiffs' remaining claims that (1) Augustine stalked Sharon, and (2) William and Augustine maliciously damaged Peggy's fence, and defendants' nuisance counterclaim. The jury heard testimony from Sharon, Peggy, William, Augustine, several area residents, a deputy sheriff, and two township-appointed "fence viewers."[4] The jury returned a verdict of no cause of action on plaintiffs' counts of stalking and malicious destruction of property, and a verdict in favor of defendants on the nuisance counterclaim. The jury determined that Marilyn had not sustained any damages, but William and Augustine sustained equal damages totaling $1,500. Plaintiffs now appeal.

## II. ANALYSIS

Plaintiffs first argue that trial court erred by dismissing plaintiffs' claim of malicious prosecution against Maveal. We disagree.

A trial court's grant or denial of a motion for summary disposition is reviewed de novo. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the pleadings alone. *Lawrence v Burdi*, 314 Mich App 203, 211; 886 NW2d 748 (2016). When deciding a motion under (C)(8), we accept all well-pleaded factual allegations as true, construing them in the light most favorable to the nonmoving party, and grant the motion only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Dalley v Dykema Gossett*, 287 Mich App 296, 304–05; 788 NW2d 679 (2010).

A motion for summary disposition under MCR 2.116(C)(10) should be granted if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law after a review of all the pleadings, admissions, and other evidence submitted by the parties, viewed in the light most favorable to the nonmoving party. *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 582-583; 794 NW2d 76 (2010). There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party. *Id*.

The moving party has the initial burden to support its claim for summary disposition by affidavits, depositions, admissions, or other documentary evidence, and the burden is then shifted

---

[4] MCL 43.54-55 permits any township board to appoint fence viewers to:

> (a) Determine if a property owner or tenant in possession of property is using a fence constructed or maintained by an adjoining property owner, and if so, what percentage of the cost of construction and maintenance of the fence the property owner or tenant using the fence is responsible for.

> (b) Assess the amount of damage if an animal of a property owner or of a tenant in possession of property causes damage to an adjoining property owner's fence.

to the nonmoving party to demonstrate that a genuine issue of material fact exists. *McCoig Materials, LLC v Galui Construction Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). The existence of a disputed fact must be established by substantively admissible evidence, although the evidence need not be in admissible form. MCR 2.116(G)(6); *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 441; 814 NW2d 670 (2012). If the nonmoving party fails to establish the existence of a material factual dispute, the moving party's motion is properly granted. *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001).

This case involves both civil and criminal of proceedings, and the elements for a claim of malicious prosecution vary accordingly. In order to establish malicious prosecution of a *civil* proceeding, the plaintiff must show that (1) the prior proceedings terminated in the plaintiff's favor; (2) there was no probable cause for the prior proceedings; (3) the prior proceedings were brought with malice, i.e., "a purpose other than that of securing the proper adjudication of the claim"; and (4) a "special injury" resulted from the prior proceedings. *Id*. at 48. A "special injury" is an "injury to one's fame (as by a scandalous allegation), injury to one's person or liberty, and injury to one's property." *Id*. at 33-34. It must be an injury that would not necessarily occur in all lawsuits alleging similar causes of action. *Barnard v Hartman*, 130 Mich App 692, 694-695; 344 NW2d 53 (1984).

In order to establish a claim for malicious prosecution in a *criminal* proceeding, the plaintiff has the burden of proving (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. *Weiden v Weiden*, 246 Mich 347, 352; 224 NW 345 (1929); *Walsh v Taylor*, 263 Mich App 618, 632-633; *Matthews v Blue Cross & Blue Shield of Michigan*, 456 Mich 365, 378; 572 NW2d 603 (1998).

Contrary to plaintiffs' argument, the trial court did not require that plaintiffs demonstrate "special damages" to maintain their claim for malicious prosecution in a *criminal* proceeding.[5] The trial court clearly indicated that summary disposition was appropriate under MCR 2.116(C)(8) because plaintiffs could not show "special damages" with respect to the claim for malicious prosecution in the *civil* proceeding. Sharon alleged that she "had to hire a lawyer, appear in court, lost time from her farming business and sustained mental stress, emotional anguish, insult, humiliation and hurt feelings." These alleged injuries, however, are the type of injuries that likely

---

[5] At oral argument, plaintiff asserted that this case involves only malicious prosecution in a *criminal* proceeding because the civil citations were issued in accordance with MCL 600.8709(4) which requires that the citations "contain a notice . . . that the failure of the defendant to appear . . . is a misdemeanor and will result in entry of a default judgment against the defendant on the municipal civil infraction." However, the misdemeanor results from a failure to appear, not from violation of the ordinance, and plaintiff does not allege or argue that any such misdemeanor was incurred. MCL 600.8709(4) does not convert the civil proceeding into a criminal one, and does not entitle plaintiffs to relief.

would occur in all lawsuits, and therefore do not rise to the level of a "special injury." See *Barnard*, 130 Mich App at 694-695.

Plaintiffs argue that the trial court erred by finding that they failed to allege sufficient facts to show that Maveal acted with malice because malice could be inferred from Maveal's threatening statements to Sharon,[6] that he lacked of probable cause to issue the citations against Sharon, and that he suppressed exculpatory evidence, i.e., the calls that Sharon and Peggy made to the sheriff regarding William and Augustine tampering with the fence, which would have discouraged Miller from pursuing the prosecution of the infractions against Sharon.

However, Maveal's alleged failure to present the so-called exculpatory evidence to Miller is insufficient to sustain plaintiffs' claim for malicious prosecution. *Payton v Detroit*, 211 Mich App 375, 395; 536 NW2d 233 (1995) (failure to include all exculpatory facts is not adequate to sustain a suit for malicious prosecution). The existence of probable cause is a question of law for the court. *Matthews*, 456 Mich at 378. Probable cause is defined as "a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious, or as some courts put it, a prudent, man in the belief that the party is guilty of the offense with which he is charged." *Merriam v Contl Motors Corp*, 339 Mich 546, 554; 64 NW2d 691 (1954).

In 2016 and 2017, Maveal made numerous trips to the Zlatkin farm for complaints of animals running at large. On several occasions, he personally assisted with returning animals to the Zlatkin farm. At least once, deputies were dispatched to assist with plaintiffs' loose animals which were a common source of complaint from a number of area residents. Under these circumstances, Maveal had reasonable ground for suspicion that plaintiffs were guilty of allowing their animals to run at large in violation of MCL 433.12, notwithstanding plaintiffs' challenges to the veracity of William's complaints.[7]

Moreover, a prosecutor's exercise of independent discretion in initiating and maintaining a prosecution is generally a complete defense to an action for malicious prosecution. *Matthews*, 456 Mich at 386. Thus, Miller's affidavit is not "immaterial" in this case, and the trial court did

---

[6] Plaintiffs' Interrogatory Answer indicates that Maveal extorted a puppy from Sharon and made several threatening statements to her including:

"I will get you. I will get you to lose all your horses and your farm."

"I will see that you have nothing."

"Now I have you for a felony."

[7] Although Maveal's alleged threatening statements to Sharon are evidence of motive, the lack of probable cause is fatal to plaintiffs' claim. *Weiden*, 246 Mich at 352 (lack of probable cause may not be inferred from malice); *Hamilton v Smith*, 39 Mich 222, 226 (1878) (if it appears that the defendant had probable cause the action must fail, no matter how wicked or flagitious may have been the real motive).

not err in relying on it when determining that summary disposition was warranted under MCR 2.116(C)(10). Accordingly, plaintiffs' arguments are without merit.

Plaintiffs next argue that the jury's verdict was against the great weight of the evidence. Plaintiffs did not file a motion for a new trial. MCR 2.611(A)(1)(e) provides that "[a] new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected" because "[a] verdict is against the great weight of the evidence or contrary to law." A motion for new trial must be filed within 21 days of the judgment. MCR 2.611(B). In criminal cases, a defendant's unpreserved claim that a verdict was against the great weight of the evidence is reviewed for plain error. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). This is not true in civil cases where failure to raise the issue by the appropriate motion forfeits the issue on appeal. *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 464; 633 NW2d 418 (2001). Accordingly, plaintiffs have forfeited this claim. However, if plaintiffs had preserved their claims for appeal, each of them would fail on the merits.[8]

---

[8] The evidence did not overwhelmingly favor plaintiffs on their claim of stalking as they now argue. To the extent that Augustine was documenting plaintiffs' behavior in order to defend himself against plaintiffs' claims or gather evidence in support of the counterclaim, his actions cannot be considered stalking because it falls within the safe harbor of lawful behavior. *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 724; 691 NW2d 1 (2005) (surveillance, when it is conducted to obtain evidence concerning a party's claim in a lawsuit, is valid and well within the law). Moreover, Augustine and several area residents testified that Augustine routinely drove around the neighborhood in his golf cart as part of his retirement activities, rather than to observe the Zlatkin farm. Thus, any of Augustine's actions that fall outside of the safe-harbor are subject to a credibility determination, which the jury resolved in favor of defendants, and we must defer to the jury's determination. *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d 723 (2008).

Nor did the evidence overwhelmingly favor plaintiffs on their claim of malicious destruction of property. Augustine testified that he placed metal stakes in plaintiffs' electric fence to repair fallen portions where plaintiffs' animals regularly escaped, not to short out the fence. An area resident testified that he helped William do the same, with the same intention of helping plaintiffs. Again, the jury was left with a credibility determination, which it resolved in favor of defendants. *Id.*

Finally, the evidence did not overwhelmingly favor plaintiffs on the counterclaim of nuisance. William, Augustine, and several area residents testified that plaintiffs' animals were habitually at large. Plaintiffs' bull was loose on three different days, plaintiffs' horses, cattle, and sheep were loose numerous times, sometimes at night, once Maveal was kicked by plaintiffs' horse while trying to return it to the Zlatkin farm, and once William was hospitalized for shortness of breath and chest pains after chasing plaintiffs' horse back into its pasture. This resulted in numerous complaints from area residents, danger to passersby, injury to the good Samaritans that helped corral the animals, and damage to nearby properties from hoofprints and droppings. The evidence clearly preponderated toward defendants.

Accordingly, plaintiffs' arguments are without merit.

## III. CONCLUSION

The trial court did not commit error requiring reversal when it granted summary disposition in favor of Maveal, and plaintiffs forfeited their claim that the jury's verdict was against the great weight of the evidence. Therefore, we affirm.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford